418 A.2d 513
COMMONWEALTH of Pennsylvania
v.
David Lee POTEETE, Appellant.
Superior Court of Pennsylvania.
Submitted June 29, 1979.
Filed Jan. 18, 1980.

Thomas G. Klingensmith, Public Defender, Lancaster, for appellant.

Joseph C. Madenspacher, Assistant District Attorney, Lancaster, for Commonwealth, appellee.

Before HESTER, HOFFMAN and CATANIA,* JJ.

HOFFMAN, Judge:

Appellant contends that: (1) the evidence is insufficient to prove receiving stolen property, and (2) the warrantless search of his home was unlawful because the police used deception to gain entrance. We agree that the search of appellant's home was unlawful and, accordingly, reverse judgment of sentence and remand for a new trial.[1]

Twice in April, 1976, a home owned by Alsena Kirschner was burgled. Kirschner suffered loss of many pieces of living room and dining room furniture, appliances, lamps, clothing, bedding, glassware and dishes. On January 1, 1977, Trooper Joseph Westcott of the Pennsylvania State Police visited appellant's home to speak with Donna Riehl Poteete, with whom appellant lived. Westcott was investigating a retail theft in which he believed Donna Riehl

* President Judge FRANCIS J. CATANIA of the Court of Common Pleas of Delaware County, Pennsylvania, is sitting by designation.

1. Appellant also contends that (1) introduction of photographs of the stolen property, without introduction of the property itself, denied him due process, and (2) the charge of the court improperly permitted the jurors to infer from his possession of the stolen goods that he knew that the goods were stolen. Because of our disposition of this appeal, we do not consider these issues.

Poteete may have been involved. While in the apartment, Westcott noticed the furniture. Later, when reviewing the report of the burglaries of Kirschner's home, Westcott recalled that some of the furniture in appellant's home resembled items taken from Kirschner. Westcott then began to investigate whether appellant was involved in those burglaries. He directed inquiries to other officers and examined reports of other burglaries to determine if the furniture in appellant's apartment could have been stolen from other homeowners. Westcott obtained from Kirschner detailed descriptions of her stolen property. Subsequently, he focused his investigation on the burglaries of her home. On February 4, 1977, Westcott went to the apartment complex in which appellant lived and confirmed that appellant and Donna Riehl Poteete were the tenants of the apartment in which he had seen the furniture.

On February 7, 1977, Westcott returned to the Poteetes' residence, armed with Kirschner's description of the stolen furniture, with which he planned to compare the furniture in appellant's apartment. Westcott met appellant at the door and told him that he wished to discuss a theft of appellant's car that had occurred some time before. Appellant permitted Westcott to enter, and Westcott asked a few questions about the car theft. Westcott then observed the furniture, noting that the items fit Kirschner's description. Concluding that the furniture was Kirschner's, Westcott informed appellant that he was a suspect in the burglaries, warned him of his *Miranda* rights and requested permission to examine the furniture more closely. When appellant refused permission, Westcott left, obtained a search warrant and returned about two hours later to execute it. Appellant was not home. Westcott and other officers entered with a passkey supplied by the apartment manager, examined the furniture and called Kirschner. They told her that they had located her furniture and instructed her to come to appellant's apartment to take the furniture and other items stolen from her. Kirschner arrived and began removing all the items, carrying them off in a truck. The police took photo-

graphs of all the property removed, which included most but not all of the items stolen during the two burglaries of April, 1976. Police later learned that in July, 1976, appellant had sold an expensive dining room china closet stolen from Kirschner, for which he received $40.00, and that, in September, 1976, he had sold a buffet also stolen from Kirschner. At trial, the Commonwealth did not introduce the stolen property into evidence, but did enter the photographs taken the day of the search. From these photographs, Kirschner identified at trial the property stolen from her and discovered in appellant's apartment.

On July 13, 1977, a jury convicted appellant and Donna Riehl Poteete of receiving stolen property. After denying post-verdict motions, the trial court sentenced appellant to a term of imprisonment of 5 to 12 months and a fine of $100.00 and costs. This appeal followed.

■ Appellant argues that the evidence is insufficient because it does not show that he knew that the property was stolen. Police discovered in appellant's home much of the property stolen from Kirschner. Although possession of the property alone could not prove knowledge of theft, the circumstances were sufficient to justify the verdict. *See Commonwealth v. Williams*, 468 Pa. 357, 362 A.2d 244 (1976) (plurality opinion); *Commonwealth v. Phillips*, 258 Pa.Super. 109, 392 A.2d 708 (1978). First, appellant was in possession of some of the stolen property within approximately 2 months of the thefts and much of the rest within 8 months. This recent possession indicates that he knew the property was stolen. *See Commonwealth v. McFarland*, 452 Pa. 435, 308 A.2d 592 (1973). Second, he was in possession of so much stolen property, of such variety, that an inference arises that he knew that the goods were stolen. *Cf. Commonwealth v. Bailey*, 250 Pa.Super. 402, 378 A.2d 998 (1977) (possession of large amount of telephone cable usable only for telephone service). Third, appellant sold some of the stolen property soon after the thefts, receiving for at least one of the pieces a price far below its market value. *See Commonwealth v. McFarland, supra. Cf. Commonwealth v.*

*Fontana*, 265 Pa.Super. 387, 401 A.2d 1361 (1979) (defendant bought stolen property at very low price). Fourth, appellant had no relation to Kirschner, who did not know him and, therefore, would not have loaned him the property or otherwise permitted him to have possession of it. *See Commonwealth v. Williams, supra; Commonwealth v. Murray*, 246 Pa.Super. 422, 371 A.2d 910 (1977). Additionally, although appellant claimed that he had bought the property from a certain individual, he failed to produce this witness at trial and did not otherwise explain possession of the property. *See Commonwealth v. Williams, supra; Commonwealth v. Phillips, supra*. Finally, appellant left the premises soon after Westcott said he would return with a warrant. Although appellant's departure is not inconsistent with innocence, it has some probative value of guilty knowledge. *See Commonwealth v. Walters*, 250 Pa.Super. 446, 378 A.2d 1232 (1977).

■ Appellant argues that all the stolen items discovered in his home should have been suppressed as the fruits of an illegal search without warrant because Westcott used deception to obtain consent to enter the home.[2] At the suppression hearing, Westcott testified that he had recently received new information about the theft of appellant's car and that he went to appellant's home on February 7 to discuss the theft. He also admitted that he wanted another view of the furniture in the house. When he met appellant at the door, however, Westcott announced only his desire to speak about the car theft. After asking a few questions about the theft, Westcott observed the furniture and decided that it had been stolen from Kirschner. Based on his observation in appellant's home, the officer obtained a search warrant. The Commonwealth argues that Westcott's intention to discuss the car theft provided a legitimate basis

2. Although the Commonwealth did not introduce into evidence the seized items, it entered photographs of the evidence and informed the jurors that the police had discovered the evidence in appellant's home. Thus, this case is not one in which the propriety of the search is moot because the evidence seized is not used at trial. *See Commonwealth v. Biebighauser*, 450 Pa. 336, 300 A.2d 70 (1973).

for his entrance, that appellant validly consented to the entrance and that Westcott, once inside lawfully, could observe the items.

The parties agree that the legality of Westcott's observation of the furniture and, therefore, the legality of the warrant and resulting search, depend upon whether appellant made a valid consent to entry. The suppression court, supported by the record, found that Westcott had a lawful purpose in going to appellant's home, that is, to investigate the theft of appellant's car. The court, again supported by the record, found also that Westcott had focused his attention upon appellant's involvement in the burglaries of Kirschner's home and had gone to appellant's apartment to examine the furniture. The question is whether Westcott, in failing to inform appellant of the second purpose of his visit, obtained a knowing and voluntary consent. We hold that the consent was not valid.

Courts have permitted police officers to use ruses and concealment of their identities to investigate crimes which cannot be effectively investigated without such techniques, such as violations of vice, liquor, narcotics and racketeering laws. *See Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *Commonwealth v. Weimer*, 262 Pa. Super. 69, 396 A.2d 649 (1978). Courts, however, have held invalid consents to searches of the home where officers, having identified themselves, misrepresent their purpose in seeking entry. In *Commonwealth v. Wright*, 411 Pa. 81, 190 A.2d 709 (1963), police officers arrested the defendant and brought him to the station house. When questioning failed to produce any incriminating information, officers approached the defendant's wife and told her that he had admitted the crime and sent them to get the "stuff." Based on this misrepresentation, the wife permitted the officers to enter the home, in which they found incriminating evidence. In holding that the consent was invalid and that, consequently, the evidence seized should have been suppressed, our Supreme Court, speaking through Mr. Justice (now Chief Justice) EAGEN, stated:

. . . [I]t is well established that the consent may not be gained through stealth, deceit or misrepresentation, and that if such exists this is tantamount to implied coercion . . . .. The seizure was gained through the use of deceit and misrepresentation. This vitiated the seizure just as effectively as if a search were involved.

*Id.*, 411 Pa. at 85–86, 190 A.2d at 711.

In *United States v. Ong Goon Sing*, 149 F.Supp. 267 (S.D.N.Y.1957) (alternative holding), immigration agents, investigating the legality of the defendant's entry into the United States, visited the defendant and said that they wished to discuss the unrelated matter of his application to establish American citizenship for his children. The defendant permitted the agents to enter and examine some of his papers which indicated that he was illegally in the country. The district court suppressed this evidence when the prosecution sought to use the papers at a trial initiated to deport the defendant. Similarly, in *United States v. Molt*, 589 F.2d 1247 (3d Cir. 1978), agents obtained the defendant's consent to enter and examine some of his records when they innocently misrepresented that their statutory authority to investigate included the power to obtain a search warrant. Although the agents in good faith believed this erroneous representation, the Court of Appeals ruled that the evidence obtained should be suppressed because the defendant's consent, based on the misrepresentation, was not voluntary.

In each of these cases, the homeowner was misled by officers of the law, upon whom he could ordinarily rely to provide accurate information. Thus, the homeowner was lulled into a false sense of security vitiating voluntary consent. Second, in each case, the officers identified themselves and stated an official purpose in seeking entry. It is generally recognized that officers, by virtue of their status and authority, exercise some degree of coercion whenever they make requests in their official capacity. This coercion, coupled with deception, militates against deeming voluntary the consents in these cases. In *Wright* and *Ong Goon Sing*, which most closely resemble appellant's case, the homeown-

ers were unaware of the nature of the officers' visits. Thus, each was unable to make an intelligent assessment of the risks involved in consenting to entry. Further, in each of those two cases, the officers withheld the critical information which would have provided a full understanding of the invasion of privacy the officers sought. Likewise, in *Molt*, the officers' misrepresentation of their authority deprived the homeowner of the information necessary to understand the extent of his right to privacy.

██ Here, appellant was deceived by an officer of the law, who had identified himself and announced an official purpose for his visit. The officer concealed the full nature of his visit and withheld the information indicating that appellant was suspected of criminal conduct. Although West-cott's purported reason for entry was true in itself, his omission misrepresented the nature of his visit just as if he had fabricated a purpose. Whether Westcott intended to deceive appellant is irrelevant, for consent turns not on the state of mind of the officer but of the citizen. *See United States v. Molt, supra.* Indeed, Westcott's omission presents perhaps a stronger case of misrepresentation than those in *Wright, Ong Goon Sing* and *Molt.* Westcott had previously visited Donna Riehl Poteete at the same apartment to discuss an unrelated matter and had previously met appellant to discuss the theft of appellant's car. At all such times, Westcott apparently had acted honestly and without deception. In permitting Westcott to enter the home on February 7, appellant may well have been relying on the trust Westcott had established with him and Donna Riehl Poteete. The officer exploited this trust to gain entrance to the home.

This case is not one of vice, racketeering or any of the other crimes which, by their nature, police need often investigate by ruses and deceptions. *See Commonwealth v. Weimer, supra.* Nor is this case one in which appellant mistakenly placed his confidence in an individual who, contrary to fact, appeared unconnected to police agencies. *See Hoffa v. United states, supra* (informer gained defendant's

confidence). Rather, it is one in which an officer misrepresented his purpose in order to gain entrance to a home. In the circumstances of this case, the misrepresentation rendered involuntary appellant's consent.

Denying the police use of such deception does not add any extra burden to their task of investigating crimes. Rather, to allow use of such deception would authorize police conduct otherwise impermissible. There is no reason why Westcott, simply because he was engaged in investigating another, unrelated matter concerning appellant, should have been able to conduct an investigation into appellant's involvement in the burglaries by means otherwise denied him.

■ Only by means of appellant's invalid consent was Westcott able to verify that the furniture in appellant's apartment was stolen from Kirschner. Thus, his view of the evidence was illegal, the search warrant obtained on the basis of this observation was illegal and the Commonwealth should not have been permitted to use the evidence at trial.[3] *See generally Commonwealth v. Shaw*, 476 Pa. 543, 383 A.2d 496 (1978) (evidence suppressed when seizure based on illegal conduct). Use of the evidence could easily have influenced the verdict and, therefore, was not harmless error. *See Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1977).[4]

Judgment of sentence vacated and case remanded for a new trial.

HESTER, J., files a dissenting statement.

**3.** Of course, evidence such as that indicating that appellant was in possession of stolen goods within two months of the burglaries and sold them for unusually low prices is unaffected by our decision if obtained independently of the search of appellant's home.

**4.** For cases considering the propriety of using ruses to execute a search warrant, *see Commonwealth v. Regan*, 254 Pa.Super. 555, 386 A.2d 89 (1978).

We note that this case does not involve the "plain view" doctrine, which arises only when officers inadvertently discover evidence whose existence was unknown to them. *See Commonwealth v. Kaschik*, 235 Pa.Super. 388, 344 A.2d 519 (1975). Because Westcott went to appellant's home for the express purpose of viewing the furniture, his observation was not inadvertent. *See United States v. Berenguer*, 562 F.2d 206 (2d Cir. 1977).

HESTER, Judge, dissenting:

I dissent. I would affirm on the well–reasoned Opinion of Judge Brown of the court below.