646 A.2d 585

**COMMONWEALTH of Pennsylvania**

v.

**Juan GUERRERO, Appellant.**

Superior Court of Pennsylvania.

Argued May 11, 1994.

Filed August 19, 1994.

William P. Wismer, Asst. Public Defender, Allentown, for appellant.

442

Theodore R. Racines, Asst. Dist. Atty., Allentown, for Commonwealth, appellee.

Before McEWEN, OLSZEWSKI and DEL SOLE, JJ.

OLSZEWSKI, Judge.

Juan Guerrero appeals the judgment sentencing him to three-to-six years imprisonment for possession and possession with intent to deliver heroin. Guerrero brings only one challenge: he contends that the heroin found in his camera bag should have been suppressed since he had not consented to the police search which revealed it. We agree, and order a new trial.

■ In reviewing an order from a suppression court, we consider the Commonwealth's evidence, and only so much of defendant's evidence as remains uncontradicted. We accept the suppression court's factual findings that are supported by this evidence, and may only reverse if the court draws erroneous legal conclusions from them. *Commonwealth v. Hendrix*, 426 Pa.Super. 616, 627 A.2d 1224 (1993). Here, we accept all of the suppression court's factual findings, but disagree with its legal conclusion that Guerrero consented to the search of a brown paper bag inside of his camera bag.

Guerrero's search and arrest were part of an Allentown drug investigation in May of 1990. Investigating an anonymous tip, Allentown police followed two suspected drug dealers to the Allentown bus terminal. The police had reason to suspect that a bus due to arrive from Manhattan might have a drug courier on board. Guerrero was one of the five people disembarking from the Manhattan bus.

Sgt. Hendricks approached [Guerrero], identified himself as a police officer and showed [Guerrero] his badge. Sgt. Hendricks began to talk with [Guerrero], and it soon became apparent that [Guerrero] had little comprehension of English. Through gestures, Sgt. Hendricks conveyed to

[Guerrero] that he wished to see the inside of [Guerrero's] camera bag.

\* \* \* \* \* \*

[Guerrero] did in fact open up the camera bag for Sgt. Hendricks. First, [Guerrero] showed Sgt. Hendricks the side pockets which were empty. Next, [Guerrero] opened the top flap. The bag had three (3) compartments inside. ... [Guerrero] began taking items out of the bag one by one and displaying them to Sgt. Hendricks. There were baseball cards, a camera lens, etc.[1] [Guerrero] took everything out except a brown paper bag the size of a lunch bag. He left his camera bag open but did not pull out this last item. Sgt. Hendricks reached into the open camera bag and opened the brown bag, which contained 400 individual packets of heroin, weighing a total of twelve grams.

Suppression court opinion, 3/22/91 at 3–4. From these factual findings, which are basically a summary of Sergeant Hendricks' testimony at the suppression hearing, the court drew the following conclusion of law:

The law is not complicated in this area of warrantless searches. The search is valid if the person who is in control of the item consents to the search. *Commonwealth v. Elliot,* 376 Pa.Super. 536, 546 A.2d 654 (1988). The scope of that consent turns on the mind of the person consenting and not of the officer. *Commonwealth v. Poteete,* 274 Pa.Super. 490, 498, 418 A.2d 513, 517 (1980). The facts of the instant case are interesting, but again, uncomplicated. Surely [Guerrero's] mind must have been apprehensive as he voluntarily emptied out the camera bag, item by item, until the last brown bag full of heroin. He hesitated, possibly not knowing what to do. He had affirmatively given his consent up to that point. He did nothing, however, to revoke his consent. He stood at the telephone booth shelf with the bag wide open, making no protest when the officer reached in.

---

1. Sergeant Hendricks also testified that after displaying each item, Guerrero put the item back into the bag before pulling out the next item. R. 25–26.

He gave no physical or verbal indication that he was revoking his consent at any time.

Furthermore, the nature of what was removed is important. It appeared to be an ordinary brown lunch bag. It was not locked or sealed in any way. The consent to examine the contents of the camera bag necessarily included the consent to examine the nature and content of whatever was found in a normal and unintrusive manner.

Suppression court opinion, 3/22/91 at 4-5. The trial court affirmed the suppression court by adopting this reasoning and opinion at post-trial motions. Trial court opinion, 9/22/93 at 3.

■ We disagree with the lower court's legal conclusion, because it ignores the carefully delineated way in which Guerrero permitted Sergeant Hendricks to inspect his bag. There was no verbal grant of consent to search; no license given for the officer to reach into the bag. *Cf. Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (voluntary, if uninformed, verbal grant of consent to search car was a valid waiver of Fourth Amendment rights). Guerrero, however, did not relinquish control of the bag or its contents to Sergeant Hendricks at any time, or even to the slightest degree. Rather, Guerrero allowed the officer to look as he opened the empty side pockets, and then displayed the contents of the main pouch item by item. If any consent to search can be presumed from these actions, the scope of this consent is completely delineated by this specific and carefully controlled course of conduct.[2]

2. Our colleague, Judge Del Sole, would go further and hold that no consent may be presumed at all because Sergeant Hendricks did not inform Guerrero of his right to refuse the search. Both the U.S. and Pennsylvania Supreme Courts have held that a search target need not be informed of his right to refuse a search for the search to be voluntary, though such knowledge is properly considered as one aspect in a totality of the circumstances inquiry. *Schneckloth v. Bustamonte, supra; Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977).

Our Supreme Court's most recent discussion of consensual searches cites a pre-*Schneckloth* standard which would require a knowing waiver for a search to be voluntary. *Commonwealth v. Gibson, infra* (citing *United States v. Blalock*, 255 F.Supp. 268 (E.D.Pa.1966)). This standard was considered and rejected in *Schneckloth*, 412 U.S. at 235-246, 93 S.Ct. at 2051-58, and *Hubbard, supra* at 274-76, 372 A.2d at 694.

A person's right to delimit the scope of consent to a search is well established. *Florida v. Jimeno,* 500 U.S. 248, 251–52, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297, 303 (1991). If Guerrero had spoken English, he could have explicitly given Sergeant Hendricks permission to look at the camera bag and its contents, except for the brown paper bag inside.[3] This is precisely what Guerrero did through his non-verbal course of conduct. Hence, we cannot accept the lower court's assertion that any consent to examine the camera bag "necessarily included the consent to examine the nature and content of whatever was found in a normal and unintrusive manner."

Moreover, the suppression court improperly characterized Sergeant Hendricks' act of reaching into the camera bag to open the brown paper bag as "normal and unintrusive." Given the non-verbal manner in which this "search" was proceeding, it was normal for Guerrero to pull an item out of the bag and show it to Sergeant Hendricks; Hendricks' reaching into the camera bag was not a normal part of this established course of conduct. Likewise, when we consider the complete control over the bag and its contents which Guerrero deliberately maintained, Sergeant Hendricks' act of reaching in was profoundly intrusive.

Our Supreme Court has recently stressed that it is never incumbent upon a search target to affirmatively resist or repel a police officer's unwarranted intrusion into a constitutionally protected area. Rather, "in order for consent to an otherwise illegal search to be valid, the consent must be unequivocal, specific, and voluntary." *Commonwealth v. Gibson,* 536 Pa. 123, 132, 638 A.2d 203, 207 (1994) (citation omitted). In

While the waiver language of *Gibson* supports Judge Del Sole's concurrence, we hesitate to apply it to the instant case in light of the contrary holdings in *Schneckloth* and *Hubbard.* If our high court meant to interpret Art. I, § 8 of the Pennsylvania Constitution to incorporate the waiver standard, it did not so indicate.

**3.** Such a carefully delimited grant of consent might focus suspicion on the brown paper bag, but no more so than refusing consent to a complete search focuses suspicion on the entire camera bag. Merely exercising one's constitutional right to refuse a request for a voluntary search will not create probable cause.

*Gibson,* a police officer "maneuvered" himself into an apartment to investigate possible underage drinking inside. The officer had no warrant, nor probable cause to search which could permit an exigent entrance. Our Supreme Court described the non-consensual entrance in terms similar to Sergeant Hendricks' encounter with Guerrero:

> The owner did not give his express consent that the police could enter. Nor did he refuse to let the police in. Instead, he testified that the police chief maneuvered him into the foyer of the apartment, and fellow officers followed him into the apartment. [The apartment owner] testified: "I did not give permission. I was not asked. I didn't say you cannot come in, or stop; but I didn't say yes, come on in."

*Id.*

Viewing the record in the light most favorable to the Commonwealth, and precisely as characterized by the suppression court, we must conclude that any manifestation of consent to Sergeant Hendricks' sudden reach into the bag was similarly absent. The suppression court erred in extrapolating some kind of general consent to search the entire bag from Guerrero's narrow course of conduct. Guerrero's conduct evidenced his consent to Sergeant Hendricks' passively gazing upon those items which he chose to display—nothing more. In stating that Guerrero "had affirmatively given his consent up to that point," the suppression court was exactly correct— the consent ended at that point. Guerrero never manifested any consent to Sergeant Hendricks' act of reaching into his camera bag; the seizure of the brown paper bag was thus non-consensual, even without an extra protest or gesture from Guerrero.

We also note that because Guerrero did not speak English, he could not verbally express his desire that Sergeant Hendricks stay out of his bag. The suppression court posits that a mere gesture would have sufficed to stop the sudden reach; but for all we know from the record, Guerrero might have had to grab the officer's hand, or otherwise physically repel him. Law-abiding folk naturally hesitate to physically interfere with

a police officer, and we should be wary of defining the law of consent to require such a borderline illegal action in order to protect one's constitutional right not to be unreasonably searched.[4]

■ The Commonwealth does not contend that its suspicions that Guerrero might be carrying drugs entitled Sergeant Hendricks to conduct a non-consensual search of the camera bag. Therefore, we must conclude that the act of reaching into Guerrero's camera bag to seize the brown paper bag violated Guerrero's Fourth Amendment rights, as well as his rights under Art. I Section 8 of the Pennsylvania Constitution, and the heroin found in it should have been suppressed. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991). Since the heroin seized through this unconstitutional search formed the basis of the case against him, the failure to suppress is certainly not harmless error. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

Judgment of sentence vacated, and case remanded for a new trial. Jurisdiction relinquished.

**4.** Moreover, when we consider the logical import of the lower court's legal conclusion, we see how it could easily "relegate the Fourth Amendment to the special province of 'the sophisticated, the knowledgeable and the privileged.'" *Schneckloth*, 412 U.S. at 248, 93 S.Ct. at 2059. Suppose Guerrero responded to Sergeant Hendricks' search request by turning his front pants' pockets inside-out, as if to signify that he was hiding nothing there. Under the analysis below, Sergeant Hendricks would be entitled to presume a complete consent to search from this gesture, and it would be incumbent upon Guerrero to know that he may resist Sergeant Hendricks' efforts to put his hands against a wall, spread his legs and rifle through his other pockets. No reasonable person would dare resist such a show of apparent authority, especially when, as here, the officer flashed his badge and never communicated the right to refuse the search. We cannot possibly expect someone like Guerrero, who speaks no English and has little or no knowledge of the interaction between constitutional protections and police practices, to know that a search under such a powerful show of authority in fact turns on his continued consent. *Cf. Commonwealth v. Danforth*, 395 Pa.Super. 1, 18–20, 576 A.2d 1013, 1022 (1990) (consent more likely to be voluntary if "the defendant's background indicates his understanding of investigating procedures or his understanding of constitutional rights"), *aff'd* 532 Pa. 152, 615 A.2d 308 (1992).

448

DEL SOLE, Judge, concurring.

I concur with the Majority's decision to suppress the fruits of the search. However, my review of the record convinces me that there is no testimony which would support an initial determination of a consent to search.

Sergeant Hendricks testified that the defendant did not understand English and an interpreter was necessary to give Miranda warnings at the police station. Further, he stated that he did not speak Spanish.

There is no testimony which would supports a finding that the defendant consented to a search, meaning it was with knowledge that a search would not be conducted if refused. As recently as March of this year, our Supreme Court reiterated the need of intelligent waiver. In *Commonwealth v. Gibson*, 536 Pa. 123, 638 A.2d 203 (1994) it held:

In order for consent to an otherwise illegal search to be valid, the consent must be unequivocal, specific and voluntary. [citations omitted] It is only where there is an intentional relinquishment or abandonment of a known right or privilege that an effective waiver can be found. [citation omitted] The subject of a search must be made aware of his rights against a warrantless search for a waiver to be intelligent.

131, 638 A.2d at 207.

Given that lack of evidence, I conclude the initial showing by the defendant of the bags contents was without consent. Therefore, I do not find it necessary to hold that the defendant, by his actions, limited the extent of an otherwise valid search.