COMMONWEALTH of Pennsylvania,
Appellee,

v.

Karen R. EDWARDS, Appellant
(at 1151).

Commonwealth of Pennsylvania,
Appellee,

v.

Carilyn A. Logue, Appellant (at 1152).

Commonwealth of Pennsylvania,
Appellee,

v.

James R. Edwards, Appellant (at 1153).

Superior Court of Pennsylvania.

Submitted Jan. 11, 1999.
Filed July 26, 1999.

Robert Varsek, Franklin, for appellants.

Matthew J. DiGiacomo, Asst. Dist. Atty., Franklin, for the Com., appellee.

Before DEL SOLE, STEVENS and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 This appeal challenges the denial of appellants' motion to suppress evidence by the Court of Common Pleas of Venango County. Specifically, appellants ask "[w]hether the trial court committed error by permitting the admission of evidence at trial de novo which was obtained by police officers pursuant to constitutionally invalid consent to search." Appellants' brief, at 3. For the reasons set forth below, we affirm.

¶ 2 On September 14, 1997, at approximately 12:30 a.m., the Franklin City Police received an anonymous complaint of loud noise and underage drinking at a house located in the city. Police officers Baughman, Hoover, and Pacori responded to the house and, as they approached, they could hear loud music and singing coming from the residence. Officer Pacori went to the rear of the house. Officer Baughman looked into a side window and saw several people, including appellant James Edwards, singing to the loud music. Officer Baughman also saw Mr. Edwards drinking out of a cup containing a red liquid. Officers Baughman and Hoover then approached the front door of the house.

¶ 3 Upon knocking at the door, a fifteen-year-old named Bridgette Knight answered and, according to the officers' testimony, she gave them permission to enter the house upon their request. According to Officer Baughman, he asked Ms. Knight if she was the owner and she replied that she was not, but that she would go get the owner. At that point, the officers stopped proceeding into the house, but they could observe the living room from their position where they saw several people in the living room drinking. A few minutes later, appellant Logue, who was the owner of the house, appeared and spoke to the officers. Officer Baughman asked Ms. Logue if there was anymore beer in the house; she replied that she did not think there was anymore beer, but that the officer could "go ahead and check." N.T. Suppression, 2/23/98, at 17. Upon opening the refrigerator, Officer Baughman found several bottles of red malt liquor beer.

¶ 4 Based upon the above facts, the appellants were charged with underage drinking. They were found guilty at the district justice level and appealed to the court of common pleas. Appellants filed a pre-trial motion to suppress the evidence obtained by the officers alleging that the evidence was obtained through an illegal search of the house. The trial court denied the motion, finding that consent was given for the search. Following a trial de novo, the convictions were upheld. This timely appeal of the denial of the suppression motion followed.

¶ 5 The standard of review of a suppression court's denial of a motion to suppress is well settled:

"In an appeal from the denial of a motion to suppress our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is

an error in the legal conclusions drawn from those factual findings."

*Commonwealth v. Lohr*, 715 A.2d 459, 461 (Pa.Super.1998) (quoting *Commonwealth v. Carlson*, 705 A.2d 468, 469 (Pa.Super.1998)).

¶ 6 Appellants contend that appellant Logue's consent to search was constitutionally invalid under the Pennsylvania Constitution because she was not informed of her right to refuse consent to a warrantless search.[1] A search or seizure is not reasonable unless it is conducted pursuant to a search warrant issued by a magistrate upon a showing of probable cause. *Commonwealth v. Blasioli*, 454 Pa.Super. 207, 685 A.2d 151, 156 (1996). One exception to the warrant requirement is when a person voluntarily consents to the search. *Id.* In order for consent to be valid, it must be unequivocal, specific, and voluntary. *Id.* Consent must also be given free from coercion, duress, or deception. *Id.* The voluntariness of consent is a question of fact that is determined by looking at the totality of the circumstances. *Id.*

¶ 7 Appellants claim that under Art. I, § 8 of the Pennsylvania Constitution,[2] a person must be informed of the right to refuse consent to a warrantless search before an effective waiver of this right can be found. This claim is based upon the premise that our Supreme Court and two members of this Court have retracted from the Supreme Court's decision in *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977), wherein it adopted the consent standard articulated by the United States Supreme Court in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The *Schneckloth* Court rejected the argument that the constitutional guarantee against unreasonable searches and seizures required the application of the knowing and intelligent waiver requirement, which is used to analyze the relinquishment of other constitutional protections. Further, the Court also rejected the idea that "the Court's decision in the Miranda case requires the conclusion that knowledge of a right to refuse is an indispensable element of a valid consent." *Schneckloth*, 412 U.S. at 246, 93 S.Ct. at 2058, 36 L.Ed.2d at 874. Finally, the Court established that

> when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing voluntary consent.

---

1. We note that appellants failed to set forth this constitutional claim in the manner prescribed in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991). The *Edmunds* court established four factors that are important for litigants to brief and analyze in order to aid the courts in reviewing state constitutional claims. These four factors are: "(1) text of the Pennsylvania constitutional provision; (2) history of the provision, including Pennsylvania case-law; (3) related case-law from other states; (4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence." 526 Pa. at 390, 586 A.2d at 895. Subsequently, our Supreme Court held that the failure to address these four elements is not fatal to a claim asserted under the Pennsylvania Constitution so long as the claim is clearly raised. *Commonwealth v. White*, 543 Pa. 45, 50, 669 A.2d 896, 899 (1995). Appellants have set forth a claim under the Pennsylvania Constitution, have cited Pennsylvania case law, and related the cases to their claim. We find this sufficient under *White*, but encourage litigants to use the *Edmunds* factors when presenting a claim under the Pennsylvania Constitution.

2. Article I, Section 8 of the Pennsylvania Constitution provides that "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures."

*Schneckloth*, 412 U.S. at 248–49, 93 S.Ct. at 2059, 36 L.Ed.2d at 875. In *Hubbard*, the defendant consented to an inspection of his vehicle and boots during questioning by police who were investigating a murder. The defendant argued that his consent was involuntary because he was not given *Miranda* warnings prior to his consent. Relying on the *Schneckloth* decision, our Supreme Court disagreed and held that the defendant's consent was voluntary. In conclusion, *Hubbard* established that, in Pennsylvania, a person need not be informed of his right to refuse consent to a warrantless search in order for the consent to be found voluntary, but that such knowledge will be considered when assessing the totality of the circumstances surrounding the search.

¶ 8   In 1994, our Supreme Court rendered a decision in *Commonwealth v. Gibson*, 536 Pa. 123, 638 A.2d 203 (1994). The factual background of the case involved the police going to an apartment building in order to investigate a party in a second-floor apartment. The police did not have a search warrant for any unit in the building. After the police discovered that the party on the second floor was already over, they proceeded to a first-floor apartment. There was no loud noise coming from this apartment and no people coming in and out of the apartment. In addition, the police had no knowledge of a party or underage drinking taking place in this apartment. Nevertheless, the police knocked on the door, entered the apartment, and questioned the appellants. At no point did the police advise appellants why they were present or that they were investigating for underage drinking. The police did not ask for consent to enter the apartment and the owner neither gave his consent, nor refused to let them enter.

¶ 9   Initially, the *Gibson* court held that it was examining the case using the traditional Fourth Amendment search jurispru-

dence. 536 Pa. at 127–31, 638 A.2d at 205–06. When discussing whether the defendant consented to the search of the apartment, the court set forth the following language:

> It is only where there is an intentional relinquishment or abandonment of a known right or privilege that an effective waiver can be found. *United States v. Blalock*, 255 F.Supp. 268 (E.D.Pa. 1966). The subject of a search must be made aware of his rights against a warrantless search for a waiver to be intelligent. *Id.*

*Gibson*, 536 Pa. at 132, 638 A.2d at 207. There is no indication in the opinion, however, that the court was interpreting Article I, § 8 of the Pennsylvania Constitution to include a waiver standard when assessing the validity of consent. Further, the court resolved that under the circumstances of the case the defendant did not give an unequivocal, specific, and voluntary consent because he neither expressly consented to the police entry, nor refused it and the police never informed him as to why they were present. More importantly, the court stated that "[h]ad the police announced their purpose, we could then infer consent had the owner failed to refuse access." *Gibson*, 536 Pa. at 133, 638 A.2d at 207–08.

¶ 10   In addition to the three points made above, we note that the *Gibson* court cites to *United States v. Blalock*, 255 F.Supp. 268 (E.D.Pa.1966), a pre-*Schneckloth* decision, to support its waiver standard language. *Blalock* held that the Commonwealth must show either that the person was informed of his right to refuse or that he was aware of this right in order to find an intelligent waiver of the right to refuse a warrantless search. Our research reveals that this decision has not been followed in the Third Circuit [3] and has been unequivocally rejected by several oth-

**3.**   *United States v. Menke*, 468 F.2d 20 (3d Cir.1972); *Harris v. Hendricks*, 423 F.2d 1096 (3d Cir.1970); *Government of Virgin Islands v.*

*Berne*, 412 F.2d 1055 (3d Cir.1969); *United States v. Rundle*, 274 F.Supp. 364 (E.D.Pa. 1967).

er circuit courts.[4] Also, the Supreme Court in *Schneckloth* specifically found that requiring that a person be informed of the right to refuse before requesting his consent has been "universally repudiated by both federal and state courts." 412 U.S. at 231, 93 S.Ct. at 2049, 36 L.Ed.2d at 865. Therefore, we find reliance on *Blalock* dubious at best.

■ ¶ 11 Regardless of the ambiguous proclamation in *Gibson*, the decision has caused two judges on this Court to reflect upon whether or not under the Pennsylvania Constitution a person must be informed of the right to refuse consent a warrantless search before we can find either a voluntary consent or an intelligent waiver of this right. In order to resolve this issue, we will set forth and discuss decisions subsequent to *Gibson*.

¶ 12 In *Commonwealth v. Guerrero*, 435 Pa.Super. 440, 646 A.2d 585 (1994), the appellant was approached by police when he exited a bus because of suspected drug trafficking. Appellant did not understand English, but an officer made gestures indicating that he wished to look inside appellant's camera bag. Rather than give the bag to the police, the appellant opened the bag and pulled out various items in the bag, displayed them, and placed them back in the bag. The only item the appellant did not pull out was a brown paper bag. The officer reached into the camera bag and pulled out the paper bag himself. In the paper bag was twelve grams of heroin. Appellant challenged the search of his camera bag, contending that he had not given consent to search it. We found that there was no verbal consent given to search the bag and that the appellant, by his actions, restricted his consent to allowing the officer to view only those items in the bag that he chose to display and nothing more. As a result, the seizure of the paper bag violated the appellant's rights under the Fourth Amendment and under Article I, § 8 of the Pennsylvania Constitution.

¶ 13 Concurring with the majority's decision to suppress the heroin illegally seized, Judge Del Sole wrote separately to express his view that no consent could be found at all because the appellant had not been informed of his right to refuse the search. *Guerrero*, 646 A.2d at 588 (Del Sole, J. concurring). Judge Del Sole found that "[t]here was no testimony which would support a finding that the defendant consented to a search, meaning that it was with the knowledge that a search would not be conducted if refused." *Id.* In so stating, Judge Del Sole relied upon the *Gibson* decision. The majority responded to Judge Del Sole's concurrence wherein it explained that "[i]f our high court meant to interpret Art. I, § 8 of the Pennsylvania Constitution to incorporate the waiver standard, it did not so indicate [in the *Gibson* decision]." *Id.* at 587 n. 2.

¶ 14 Subsequently, our Supreme Court rendered a decision in *Commonwealth v. Melendez*, 544 Pa. 323, 676 A.2d 226 (1996). In *Melendez*, the police had appellant's house under surveillance for suspected drug activity. The police were waiting for a search warrant to be issued to search house. While they waited, the appellant left her house and drove away in her car. The police stopped appellant in her vehicle and searched her and her car. Then the police took appellant back to her house and used her keys to open the door. After waiting an hour in the house until the search warrant arrived, the police conducted a search of the house. On appeal, the appellant challenged both the stop and search in her car and the warrantless entry into her home.

¶ 15 Upon finding that the stop and search of appellant in her car was illegal, our Supreme Court turned to the warrantless entry of appellant's house. One of the

**4.** *United States v. Sheard*, 473 F.2d 139 (D.C.Cir.1972); *United States ex rel. Combs v. La Vallee*, 417 F.2d 523 (2d Cir.1969); *United States v. Hammond Milling Co.*, 413 F.2d 608 (5th Cir.1969); *Gorman v. United States*, 380 F.2d 158 (1st Cir.1967).

several theories presented to justify the entry was that appellant had given her consent. The only consent standard set forth was that the Commonwealth was required to show that the consent was freely and voluntarily given, which could not be proven by showing a mere acquiescence to a claim of authority. 544 Pa. at 331–33, 676 A.2d at 230. The Court found that there was no evidence that the appellant consented to accompany the police or to allow them to enter her house. Concluding that appellant did not consent, the Court stated that

> [i]n this case, [appellant] was not informed of her right to refuse to accompany police or her right to refuse their entry into her house. Clearly, she waived nothing, and she *certainly* did not freely and voluntarily consent to the police entry into her house.

544 Pa. at 331, 676 A.2d at 230 (emphasis in original).

¶ 16 Again, as in *Gibson, supra,* there is no indication that our Supreme Court was incorporating a waiver standard under the Pennsylvania Constitution. There is no discussion about extending the protection under the Pennsylvania Constitution to require that a person be informed of the right to refuse a warrantless search prior to finding consent voluntary. Also, it has already been acknowledged in *Schneckloth* and *Hubbard* that a person's knowledge of the right to refuse is a factor to take into account when assessing the voluntariness of a consent to search. It is clear that the *Melendez* Court assessed the facts as a whole in coming to its conclusion that the appellant did not voluntary consent to a warrantless entry of her house. Therefore, we conclude that our Supreme Court in *Melendez* did not incorporate a waiver standard requiring that a person must be informed of the right to refuse a warrantless search prior to finding that consent was voluntary.

¶ 17 Finally, appellants cite to Judge Johnson's dissent in *Commonwealth v. Hoak,* 700 A.2d 1263, 1271 (Pa.Super.1997), to support their claim that the voluntariness standard of *Schneckloth* and *Hubbard* has been implicitly rejected in Pennsylvania. Appellants' brief, at 15. In *Hoak,* the issue was whether the defendant voluntarily consented to a search of his duffel bag after he was legally stopped in his automobile, given a warning, and told he was free to leave. The majority held that the search was legal because the appellant was not seized at the time he gave his consent to the search and because his consent was voluntary in that it was offered, not asked for. *Hoak,* 700 A.2d at 1270–71. On the other hand, Judge Johnson opined that our Supreme Court's holding in *Gibson, supra,* was "at odds" with the United States Supreme Court's decision in *Schneckloth.* Relying upon *Gibson, supra,* and *Melendez, supra,* Judge Johnson concluded that "the controlling precedent of our supreme court *implicitly* rejects the central holdings of the *Schneckloth* Court." *Hoak,* 700 A.2d at 1279 (Johnson, J. dissenting) (emphasis added). Notwithstanding this conclusion, Judge Johnson acknowledged that although "neither the *Melendez* nor the *Gibson* courts explicitly grounded their decisions in Article I, Section 8 of the Pennsylvania Constitution," he was "constrained to conclude that the central holdings of Schneckloth ... [were] rejected by our supreme court." *Id.*

¶ 18 Initially, we note that Judge Johnson did not address our Supreme Court's decision in *Hubbard, supra.* In addition, Judge Johnson provided no explanation for our Supreme Court's statement in *Gibson* that "[h]ad the police announced their purpose, we could then infer consent had the owner failed to refuse access." *Gibson,* 536 Pa. at 133, 638 A.2d at 208–08. Interestingly, Judge Del Sole, who also relied on *Gibson* in his concurrence in *Commonwealth v. Guerrero,* 435 Pa.Super. 440, 646 A.2d 585 (1994), did not address this statement either. Moreover, as discussed above, the authority cited to by the *Gibson* court, *United States v. Blalock,* 255 F.Supp. 268 (E.D.Pa.1966), is a pre-

*Schneckloth* decision that has not been followed in the federal courts. Thus, it is clear that our Supreme Court has yet to pronounce that under Article I, § 8 of the Pennsylvania Constitution a person is entitled to be informed of the right to refuse consent to a warrantless search prior to giving consent.

■ ¶ 19 Addressing the circumstances of the search at issue herein, we find that appellant Logue gave her voluntary, specific, and unequivocal consent to search. The suppression court concluded that appellant Logue invited Officer Baughman to search after he asked her if there was any more beer in the house. The evidence presented at the suppression hearing supports this conclusion. Based upon this finding, the suppression court found a voluntary consent given to Officer Baughman to search for alcohol on the premises. We find no error in this conclusion and affirm the denial of appellants' motion to suppress the evidence of the alcohol found in the search.

¶ 20 Judgment of sentence affirmed.

¶ 21 Concurring Opinion by DEL SOLE, J.

DEL SOLE, J., concurring:

¶ 1 I agree with the majority that the adjudications of guilty should be upheld, but I disagree with the majority that this case implicates any constitutional question on the issue of intelligent waiver of the right to refuse consent to a warrantless search. The issue in this case, as framed by the majority, is whether "... Logue's consent to search was constitutionally invalid under the Pennsylvania Constitution because she was not informed of her right to refuse consent to a warrantless search." Majority Opinion at 725. I do not believe

we have to reach the merits of this issue. The ultimate issue in this case was whether the police entry into the house was valid. The facts establish that the police obtained permission from Bridgette Knight to enter the house. Upon learning that Knight was not the owner of the house, the officers stopped and waited for the owner. While talking to Logue, the owner, but prior to asking her for any consent to search, one of the officers observed Karen Edwards pick up a beer can from the kitchen table and attempt to hide it. N.T. Suppression, 2/23/98, at 11. The officer testified that Karen Edwards, by his observation, was obviously under the age of 21. N.T., Suppression, 2/23/98, at 30. The trial court found the officer's testimony credible. Trial Court Findings of Fact, 2/23/98, at 2.

¶ 2 Thus, based upon credible police testimony, prior to asking Logue for her consent, the officers had obtained valid entry into the house and observed illegal activity in plain view.[5] At that point, they had probable cause to investigate. The officers did not need to obtain Logue's consent, intelligent or otherwise, to search the house for evidence of underage drinking.[6]

¶ 3 Thus, while the majority's examination of the state of Pennsylvania law on the issue of intelligent waiver of the right to refuse consent to a warrantless search is interesting, it is unnecessary to the resolution of the issue in the case. This Court should not decide constitutional issues unless absolutely required to do so. *Krenzelak v. Krenzelak*, 503 Pa. 373, 381–83, 469 A.2d 987, 991 (1983), *Mt. Lebanon v. County Bd. of Elections*, 470 Pa. 317, 321–23, 368 A.2d 648, 650 (1977), *In re J.C.*, 412 Pa.Super. 369, 603 A.2d 627, 629 (1992).

5. The trial court found the officers' entry pursuant to Knight's permission valid. Trial Court Opinion, 3/16/98. Further, this issue is not on appeal.

6. Additionally, I note that the evidence focused on in this appeal, several bottles of malt

liquor in the refrigerator, was meaningless for purposes of these convictions. Although we do not have a transcript of the trial, we assume that the convictions were based upon the police officers' observations at the scene as well as breathalyzer evidence.

Accordingly, I would affirm the judgments of sentence without reaching the merits of the intelligent waiver issue.