## Commonwealth v. Erwin

---

24. *Id.* (citing restatement (second) of torts (1977)).
25. *Id.*

C.P. of Lycoming County, No. CR: 27-2013

*Eileen Dgien*, for Commonwealth.
*Pete Campana*, for defendant.

BUTTS, *P.J.*, November 25, 2013—The defendant filed a Motion to Suppress Evidence on March 26, 2013. Following a continuance request by the defendant, the hearing on the motion was held on September 27, 2013.

## BACKGROUND

On November 29, 2012 at approximately 5:00 PM, Officer Justin Snyder (Snyder) of the Williamsport Bureau of Police was in uniform and in a marked police vehicle when he observed a green Buick sedan that he was familiar with from prior contacts with police. Snyder followed the vehicle as it drove down Pine Street, turned left onto Little League Boulevard, and then right onto Market Street. When the vehicle turned onto Little League Boulevard it only initiated its turn signal while completing the turn. Snyder conducted a traffic stop of the vehicle on the four hundred block of Market Street.

Snyder requested identification from the driver, Erwin Derrick, Jr. (defendant), and noticed that he would not make eye contact with him. In addition, the defendant appeared to be clenching his mouth while he talked, as if there was something in his mouth. While in possession of the defendant's documentation and without informing him for the reason of the stop, Snyder requested that the defendant open his mouth and with the assistance of a flashlight observed a dark, leafy-like substance caked on the back molars of his teeth.[1] In Snyder's experience and

---

1. Snyder testified that he did not remember the exact statement he made to the Defendant: "The exact quotation I don't know, but I asked him if he would open his mouth because it's a search. It's just like if I

training, the substance on the defendant's teeth was chewed up marijuana and immediately arrested the defendant.

As a result of the traffic stop, the defendant was charged with one count of possession with intent to deliver, an ungraded felony;[2] possession of a controlled substance-small amount, an ungraded misdemeanor;[3] tampering with or fabricating physical evidence, a misdemeanor of the second degree;[4] and turning movements and required signals, a summary offense.[5] The defendant challenges whether the traffic stop was done with probable cause and whether Snyder lawfully searched the defendant's mouth. Additionally, the defendant filed a petition for writ of habeas corpus challenging whether the Commonwealth established a *prima facie* case for the charges filed against the defendant.

## MOTION TO SUPPRESS

The first issue alleged by the defendant is whether Snyder had reasonable suspicion or probable cause to believe that a violation of the motor vehicle code had occurred. The defendant was charged with turning movements and required signals, which states:

At speeds of less than 35 miles per hour, an appropriate signal of intention to turn right or left shall be given

---

would ask him what's in his pockets and he shows me his pockets. I can't just go in his pockets. The same thing with his mouth I just can't go in his mouth. He opted, after I asked him, to show me what was in his mouth. He opened his mouth and offered it up. If he would have said nope and kept his mouth shut and just kept ahead with what he was doing we wouldn't be here right now."

2. 35 P.S. §780-113(a)(30).
3. 35 P.S. §780-113(a)(31)(i).
4. 18 Pa.C.S. §4910(1).
5. 75 Pa.C.S. §3334(b).

continuously during not less than the last 100 feet traveled by the vehicle during turning. The signal shall be given during not less than the last 300 feet at speeds in excess of 35 miles per hour. The signal shall also be given prior to entry of the vehicle into the traffic stream from a parked position.

75 Pa.C.S. § 3334. Snyder testified that the defendant did not initiate his turn signal until he was completing the turn. Irrespective of the speed the defendant's vehicle was traveling, Snyder had probable cause to believe a violation of the motor vehicle code had occurred and legally stopped the defendant's vehicle.

The second issue raised by the defendant is whether the defendant's consent to search was voluntary. The parties have both agreed that Snyder conducted a search of the defendant. Therefore, the court need not address whether the search was permissible for officer safety. Typically, before an officer can conduct a search on an individual a search warrant by a magistrate must be obtained, which is made upon a showing of probable cause. An exception to the search warrant requirement is if an individual with proper authority "unequivocally and specifically consents to the search." *Commonwealth v. Acosta*, 815 A.2d 1078, 1083 (Pa. Super. 2003). "To establish a voluntary consensual search, the Commonwealth must prove that a consent is the product of an essentially free and unconstrained choice — not the result of duress or coercion, express of implied, or a will overborne — under the totality of the circumstances." *Id.* A variety of factors are considered when assessing the voluntariness of the consent:

1) length and location of the detention; 2) whether there were any police abuses, physical contact, or use of physical restraints; 3) any aggressive behavior or any use of language or tone by the officer that were not commensurate with the circumstances; 4) whether the questioning was repetitive and prolonged; 5) whether the person was advised that he or she was free to leave; and 6) whether the person was advised of his or her right to refuse to consent.

*Commonwealth v. Caban*, 60 A.3d 120, 131 (Pa. Super. 2012). The Commonwealth must show more than acquiescence to a claim of lawful authority. *See Commonwealth v. White*, 327 A.2d 40, 41 (Pa. 1974) (citing *Bumper v. North Carolina*, 391 U.S. 543 (1968)).

Further, the Commonwealth has the burden of persuasion at a suppression hearing. *See Commonwealth v. Enimpah*, 2013 PA Super 20 (Pa. Super. 2013) (stating that the Commonwealth has the burden at suppression hearings). In this case, however, the Commonwealth has not sufficiently provided the court with evidence to completely assess the merits of the search. Following a review of the transcript of the hearing, the Commonwealth failed to elicit testimony regarding the length of the detention. In addition, there was no testimony on what was said to the defendant prior to the request to open his mouth and whether it was repetitive, prolonged, or aggressive. The Commonwealth has failed to provide this court with evidence to consider at least three (3) of the factors to determine voluntariness.

In addition, the evidence provided by the Commonwealth fails to establish that the consent to

search was done voluntarily. The officer's statement to the defendant to render a voluntary consent of his mouth with a flashlight was solely "would you open your mouth?"[6] The language alone used by the officer leaves much to be desired. The officer did not inform the defendant that he could refuse consent, that consent was needed, or even use the word "consent" (i.e., "would you consent to open your mouth?").[7] Another glaring omission would be that the word "search" and that there was no mention that a flashlight would be used after the defendant opened his mouth. Based on the statement by Snyder, the court believes that it resembles more of a demand than a request to make a knowing consent to search.

There are additional factors that lead to the conclusion that the defendant involuntarily consented to the search. The defendant's vehicle had been pulled over after Snyder activated the lights of his marked police vehicle. Snyder testified that he possessed the defendant's documentation and that the defendant was not free to leave at the time of the request. Further, the officer testified that he could not remember if he informed the defendant why he was stopped:

CAMPANA: And when you stopped him and when you went up to the vehicle what did you say to him?

---

6. The exact language used by Snyder was not clarified during the hearing, however, he testified that he asked the defendant if he would open his mouth.

7. In *Gibson*, the Pennsylvania Supreme Court stated that "[t]he subject of a search must be made aware of his rights against a warrantless search for a waiver to be intelligent." *Commonwealth v. Gibson*, 638 A.2d 2013 (Pa. 1994). The Supreme Court, however, later found that a person is not entitled to be informed of their right to refuse consent to a warrantless search prior to giving consent. *Commonwealth v. Cleckley*, 738 A.2d 427 (Pa. 1999).

SNYDER: Something to the effect of I knew who he was so I started collecting all his biographical information.

CAMPANA: Did you tell him why he was stopped?

SNYDER: I don't remember.

CAMPANA: Did you ask him for his driver's license and registration and all that?

SNYDER: Yeah. That's what I mean by collected his biographical information.

N.T., September 27, 2013, p. 17. If the officer requested the defendant to open his mouth during the traffic stop, the defendant would have reasonably believed that the request was part of the initial stop since there was no break in between the two. *See Commonwealth v. Moyer*, 954 A.2d 659, 665 (Pa. Super. 2008); *Commonwealth v. Dales*, 820 A.2d 807 (Pa. Super. 2003).

In support of their position that the defendant consented, the Commonwealth only cited to *Danforth* and argued that the defendant believed that evidence would not have been discovered by the search. *Commonwealth v. Danforth*, 576 A.2d 1013, 1022 (Pa. Super. 1990). Interestingly, the Superior Court in *Danforth* actually found that the consent of a defendant was given involuntarily due to a variety of factors, not including the one cited by the Commonwealth. Whether the defendant believed that incriminating evidence would have been discovered, however, is merely a factor and not dispositive of the issue. Snyder also testified that the defendant's speech was impeded by the object in his mouth and that his mouth was clenched; this testimony suggests that the defendant

*was* aware that incriminating evidence was in his mouth.

Finally, the court is persuaded that the search was not voluntary based on *Acosta*. *Commonwealth v. Acosta*, 815 A.2d 1078, 1083 (Pa. Super. 2003). In *Acosta*, the defendant was stopped for a traffic violation. The defendant consented to a search after an officer requested permission to do so. The Superior Court of Pennsylvania found that the consent was not voluntary because there was no endpoint from the initial vehicle stop, the defendant's documentation was being withheld, the defendant was not told he was free not to consent, and there were multiple officers in close proximity with flashing lights. Based on the statement made by Snyder to the defendant, the lack of response by the defendant, and the lack of evidence provided by the Commonwealth at the hearing itself, this court finds that the defendant did not voluntarily consent to a search of his mouth.

In addition, even if the defendant had voluntarily consented to a search of his mouth, the scope of the search performed by the officer is also at issue. In *Guerrero*, an officer tried to request consent to search the defendant's camera bag, however, the defendant had little comprehension of English. *Commonwealth v. Guerrero*, 646 A.2d 585, 586 (Pa. Super. 1994). The defendant emptied the contents of the camera bag of everything except for a paper bag. The officer took the bag out of the camera bag and opened it. The Superior Court stated that "[a] person's right to delimit the scope of consent to a search is well established." *Id.* at 587. Therefore, the Superior Court found that the officer went beyond the scope of consent when he took the paper bag out of the camera bag and searched it without consent.

While there are many distinguishing facts between this case and *Guerrero*, the officer here did not merely look into the defendant's mouth. Snyder used a flashlight and searched the interior of the defendant's mouth. While it is possible that the defendant could have agreed to a search of his mouth with a flashlight, the officer did not clearly inform the defendant of his intentions before he used it. The court acknowledges that the details of the search here challenge the voluntariness of the search itself; however, when officers do not disclose the reason for the search, the object being searched for, or how the search will be performed, officers risk conducting a search outside the scope of consent.

As this court has found that the defendant did not voluntarily consent to a search of his mouth, the court will not address the defendant's petition for writ of habeas corpus.

## ORDER

And now, this 25th day of November, 2013, based upon the foregoing opinion, the defendant's motion to suppress is hereby granted. The court finds that the defendant did not voluntarily consent to a search of his mouth. Accordingly, it is ordered and directed that evidence seized as a result of the search of the defendant's mouth and his person incident to arrest is hereby suppressed.