638 A.2d 203

COMMONWEALTH of Pennsylvania, Appellee,

v.

Lora Kathryn GIBSON, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Jennifer Beth SCAMELL, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Cheryl Ann STOTSENBURG, Appellant.

Supreme Court of Pennsylvania.

Submitted July 20, 1993.

Decided March 8, 1994.

Mark S. Love, Tannersville, for appellant.

Curtis James Rogers, Asst. Dist. Atty., for appellee.

Before NIX, C.J., FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE, JJ., and MONTEMURO, Senior Justice.

## *OPINION*

MONTEMURO, Senior Justice.

Appellants appeal from an order of the Superior Court affirming the judgment of sentence of the Court of Common Pleas of Monroe County.

The sole question presented for our review is whether the police may make a warrantless entry into an apartment in the absence of any belief that illegal activity is being conducted, and, on the basis of information obtained thereafter, issue a citation for the summary offense of underage drinking.

The appellants are three students from East Stroudsburg University who were convicted in a non-jury trial for underage drinking. The charges arose when the East Stroudsburg Police Department investigated a party that was occurring in a second floor apartment at 316 Main Street in Stroudsburg. The appellants were not in that apartment, but were guests in a separate apartment on the first floor of 316 Main Street. No warrant was obtained to permit entry into any unit in the apartment building.

At the time the police arrived, the party in the second floor unit was already over. The police proceeded to the apartment on the first floor rented by Mr. Steven Fifoot where the appellants were guests. No loud noises were issuing from this

apartment, nor were people coming in and out of the apartment. The police officers present had no personal knowledge of a party or underage drinking in the first floor apartment.

Chief Pansy of the East Stroudsburg Police Department knocked on the door of the first floor apartment which was answered by Mr. Fifoot. Chief Pansy maneuvered Mr. Fifoot into the foyer of the apartment where they engaged in a conversation. Mr. Fifoot never expressly consented to Chief Pansy's entrance into the apartment. Two other officers present maintained that they could see the appellants inside the apartment through the open door. While Mr. Fifoot was pre-occupied with Chief Pansy, the two other police officers entered the apartment, and began questioning the appellants. The appellants were brought out of the apartment one by one where uniformed officers conducted an investigation as to their age and whether they had been drinking alcohol.

On the basis of this investigation, the appellants were issued citations for the summary offense of underage drinking.

First, we hold that the present situation should be analyzed using the traditional Fourth Amendment search jurisprudence. The term "search" as applied to searches and seizures is an examination of an individual's house, buildings or person, for the purpose of discovering contraband or some evidence of guilt to be used in the prosecution of a criminal action. *Commonwealth v. Anderson*, 208 Pa.Super. 323, 222 A.2d 495 (1966). The police were clearly at the scene to investigate underage drinking and entered the apartment in question searching for evidence of underage drinking. The Superior Court rejected this analysis, and resolved the issue using the Fourth Amendment arrest jurisprudence. As an initial matter, there is no evidence that the police entered the apartment with the intention of arresting anyone, and, in fact, the appellants were not arrested. Instead, they were issued summary offense citations. Furthermore, even assuming the arrest jurisprudence was applicable, Superior Court's conclusion that the appellants had no remedy for an illegal arrest was erroneous.

■ It is true that the unlawfulness of an arrest does not affect the jurisdiction or power of a trial court to proceed in a criminal case, and an illegal arrest or detention does not void a subsequent conviction. *See, Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Commonwealth v. Sudler,* 496 Pa. 295, 436 A.2d 1376 (1981). However, the fact patterns presented in this line of cases are distinguishable from the present situation. The court in *Sudler* found that, "[t]he only fruit of the allegedly unlawful arrest which the appellant has identified is his person." *Sudler,* 496 Pa. at 304, 436 A.2d at 1380. These cases properly stand for the proposition that the defendant himself is *not a* suppressible fruit of an illegal arrest. Thus, where a defendant has been illegally arrested but has been prosecuted with evidence independent of the illegal arrest, the conviction will stand despite an illegal arrest.

Here, the appellants are not arguing that they themselves were suppressible fruits of an illegal arrest. Instead they argue that the police obtained evidence necessary to support the summary offense citations as a result of an illegal search. This evidence includes police observations as reflected in the officers' trial testimony, police questioning of the appellants and appellants' answers thereto, identification of the appellants as "underage" and physical evidence in the nature of alcohol seized by the police. Thus, the cases cited by the Superior Court supporting its holding that the appellants were without a remedy for an illegal arrest are inapposite, and an examination of this case using traditional Fourth Amendment search jurisprudence is appropriate.

■ Generally, a search or seizure carried out in a residence without a warrant is *per se* unreasonable. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Only where the police can show that the search falls within one of a carefully defined set of exceptions based on exigent circumstances will a warrantless search be upheld. *Id.*

■ As an initial matter, it is undisputed that the police did not have a warrant to search the apartment where the appel-

lants were issued citations. The Commonwealth argues that exigent circumstances were present to justify entry because the alcohol could have been easily disposed of, and the appellants could have dispersed in the time needed to obtain a warrant. The Commonwealth supports its assertion by citing to cases which have held that exigent circumstances were found to exist where cocaine was the evidence in question. *See, e.g., Commonwealth v. Frank,* 413 Pa.Super. 273, 605 A.2d 356 (1992). Assuming the validity of this analogy [1], the Commonwealth must still demonstrate that the officers had probable cause to enter the apartment even under exigent circumstances. This we believe they have failed to do.

Probable cause exists where the facts and circumstances within the officers' knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). Suspicion is not a substitute for probable cause to conduct a valid search and seizure. *Commonwealth v. Kelly,* 487 Pa. 174, 409 A.2d 21 (1979). In the instant case, the officers present admitted having had no suspicion that a party was taking place at the lower apartment. (R.R. at 28). They did not see anyone coming in or leaving the apartment in question with containers of alcohol. (R.R. at 31a). The Commonwealth has failed to show that the officers present had facts or knowledge that would lead a reasonable person to conclude that underage

---

1. The Commonwealth asserts that there is little difference between possession of drugs such as cocaine and possession of alcohol by a minor for the purposes of determining exigent circumstances. However, in *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), the United States Supreme Court held that the warrantless entry of an individual's home to arrest him for a civil nonjailable traffic offense was prohibited by the special protection afforded the individual in his home by the Fourth Amendment. The Court found that an important factor when determining whether an exigency exists is the gravity of the underlying offense. We find a critical difference between the criminal possession of illegal drugs and the summary offense of underage drinking. Nevertheless, because we hold that the police had no probable cause in the instant case, it is not necessary to determine whether the summary offense of underage drinking is serious enough to create "exigent circumstances."

drinking was occurring in the apartment when they entered. Mere suspicion that minors were consuming alcohol in this apartment because a party was reported elsewhere in the complex is not sufficient. Without a showing of probable cause, the Commonwealth cannot claim an exigency exception to the warrant requirement.

The remedy for an illegal search is an exclusion of all the evidence derived from the illegal search. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In this case, the observations of the police, including the identification of the appellants as underage, were fruits of the illegal search. Without this evidence, the citations issued to the appellants cannot stand and are reversed.

The Commonwealth argues that the evidence obtained through this search should be allowed under the "plain view" exception. Under the plain view doctrine, evidence in the plain view of the police can be seized without a warrant. *Commonwealth v. Bentley*, 276 Pa.Super. 41, 419 A.2d 85 (1980). In order for evidence in plain view to be seized without a warrant, however, there must be a prior valid intrusion. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The discovery of the evidence must be inadvertent and the evidence must be immediately apparent as such. *Id.*

Here, the police did not have probable cause to enter the apartment initially, and therefore were not legitimately on the premises when they observed the appellants consuming alcohol. Thus, the plain view exception to the warrant requirement does not apply. However, the Commonwealth asserts that the officers were in the hallway, and could see the appellants drinking from that vantage point. The record is unclear on this point. Even assuming the police did in fact have a clear view of the appellants from their position in the hall, we find that there was nothing inherently illegal in their "plain view". It was not until the police entered the apartment, questioned the appellants, and removed them one at a time for identification that it became apparent the appellants

were engaging in illegal conduct. Viewed from the hall, the appellants could have just as easily been of age. Thus, the evidence was not "immediately apparent". *Id.* at 466, 91 S.Ct. at 2038.

We recognize that the police have the power to knock on the doors of the citizens of this Commonwealth for investigatory purposes without probable cause. We also recognize that the police can act where they see patently illegal conduct in plain view. If, for example, the appellants had been visible from the hall using drugs and drug paraphernalia, unquestionably the police could have seized the contraband and arrested the appellants. However, where, as here, the police enter an apartment without probable cause and see citizens engaged in presumptively legal conduct, they cannot question them, remove them for identification and issue a citation to them for underage drinking.

The Commonwealth argues that the owner of the apartment consented to the search of the apartment. In order for consent to an otherwise illegal search to be valid, the consent must be unequivocal, specific, and voluntary. *Commonwealth v. Stapinski,* 494 Pa. 283, 431 A.2d 260 (1981); *Commonwealth v. Wright,* 411 Pa. 81, 190 A.2d 709 (1963). It is only where there is an intentional relinquishment or abandonment of a known right or privilege that an effective waiver can be found. *United States v. Blalock,* 255 F.Supp. 268 (E.D.Pa.1966). The subject of a search must be made aware of his rights against a warrantless search for a waiver to be intelligent. *Id.*

In the present case, the police arrived at the apartment and confronted the owner in the doorway. They did not announce to him that they intended to search the apartment for evidence of underage drinking. The owner did not give his express consent that the police could enter. Nor did he refuse to let the police in. Instead, he testified that the police chief maneuvered him into the foyer of the apartment, and fellow officers followed him into the apartment. Mr. Fifoot testified: "I did not give permission. I was not asked. I didn't say you

cannot come in, or stop; but I didn't say yes, come on in." (R.R. at 37a–38a)

We find that Mr. Fifoot, under these circumstances, did not provide an "unequivocal, specific, and voluntary consent." Mr. Fifoot never gave his express consent for the police to enter. The police basically spoke briefly to the owner and entered the apartment without announcing why they were present. Had the police announced their purpose, we could then infer consent had the owner failed to refuse access. However, here, to stop the police, the owner would have had to order them out of his apartment without knowing why they were present. The law of consent in this Commonwealth does not require this on the part of a residence owner.

Accordingly, we reverse the order of the Superior Court, and discharge the appellants.

ZAPPALA and PAPADAKOS, JJ., concur in the result.

MONTEMURO, J., is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket No. 94 R1800, due to the unavailability of LARSEN, J., see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.