## Commonwealth v. Culver

444

C.P. of Philadelphia County, no. 9611-0749.

*Karen McRory,* for Commonwealth.
*Marlene S. Cooperman,* for defendant.

FIELD, *J.,* August 17, 1998—Defendant, Franklin Culver, appeals from the judgment of sentence, entered on December 10, 1997, arising from his conviction on the charges of rape, two counts of involuntary deviant sexual intercourse, aggravated indecent assault and terroristic threats. This appeal was timely filed. The defendant raises two issues on appeal in his statement filed pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. First, defendant asserts that trial counsel was ineffective for failing to file a pretrial motion to suppress physical evidence which was the fruit of a warrantless entry into the defendant's home. Second, defendant asserts that trial counsel was in-

effective for failing to properly cross-examine the Commonwealth's expert witness regarding DNA evidence. For the reasons below, these arguments are without merit and the conviction was proper.

A bench trial commenced in this matter on October 6, 1997. The following facts were established. On November 5, 1996, the defendant lured his neighbor, Jenieda Marshall, into his house by telling her he needed someone to hold a flashlight for him in his basement. Jenieda was 12 years old at the time. Once inside his house, the defendant grabbed her and would not let her leave. He forced her into the basement, handcuffed her, and put duct tape on her mouth. He removed her clothes and attempted penetration. He then carried her up to his bedroom and forced her to engage in oral sex. The police were called by Jenieda's grandmother when the girl could not be found. She told the police that Jenieda was last seen entering the defendant's home. The police were directed to the defendant's home. Upon arrival, they were met by the defendant's teenage son, Desmond, who was standing near the front door. The officers asked Desmond where his father was and told him that they wanted to ask him some questions.

Desmond went in the house, with the police following him. As he went upstairs, the officers waited in the living room. The defendant appeared, wearing nothing but a pair of sweat pants and holding an open beer bottle. When asked about Jenieda's whereabouts, the defendant stated that she had left for school. The police asked if they could look around, but the defendant told them they could not do so without a search warrant. Meanwhile, one of the officers had called their supervising officer, Sgt. Payne, and informed him of the situation. Sgt. Payne responded that he was on his way, and in fact, he arrived approximately five minutes later.

Upon his arrival, the sergeant took Desmond into another room to try and get some information from him. The teen was unresponsive and became belligerent. When Sgt. Payne and Desmond returned to the living room, the defendant was shouting at the officers. Sgt. Payne told everyone to "shut up." The whole room fell silent and the officers could hear the sound of muffled whimpering and crying coming from upstairs.

Two female officers were sent upstairs to investigate the sound. From the top of the stairs they could see into the front bedroom. There they found Jenieda, naked, handcuffed, and with duct tape over her face and mouth. Her shirt and bra were tied around her wrists. The officers tried to remove the tape, but some of it was caught in her hair. They asked her if she knew where the keys to the handcuffs were. She told them that the defendant had put them into his pants pocket when they were in the basement. Officer Bowman went to the basement. There she saw men's and women's clothing on the floor. Without touching anything else, she picked up the pair of men's jeans and reached into the pocket, finding the handcuff keys. She returned upstairs and freed Jenieda. The girl, by then wrapped in a blanket, asked the officer to get her clothes for her. The officer went back to the basement and got the rest of Jenieda's clothes. After getting dressed, Jenieda was taken to the hospital. Shortly thereafter, a search warrant was obtained, and the police confiscated the men's clothing in the basement as well as the blanket in which Jenieda had been wrapped.

Evidence presented at trial included chemical and DNA analysis of samples taken from the victim and from the items of clothing seized.

Both grounds for defendant's appeal are based on allegations that his trial counsel was ineffective. In order

to prevail on a claim of ineffective assistance of counsel, a defendant must first demonstrate that the issue, argument or tactic which counsel has foregone and which is the basis of the ineffectiveness claim, is of arguable merit. If so, then it must be shown that counsel had no reasonable basis for the course of action taken. Finally, if the first two tests are met, the defendant must show that counsel's course of action resulted in actual prejudice. *Commonwealth v. Paolello,* 542 Pa. 47, 75-76, 665 A.2d 439, 454 (1995). The burden is on the defendant because counsel's actions are presumed to be effective. *Id.*

Defendant first asserts that his counsel should have filed a motion to suppress physical evidence taken from the house. He argues that even though the items were eventually taken pursuant to a warrant, but for the warrantless entry into the house, the items would not have been discovered.

Police originally entered the house for investigatory purposes. They told Desmond that they wanted to speak with his father. Desmond went in the house and allowed the police to follow. Where police have made their purpose known, and access is not refused, consent to enter can be inferred. *Commonwealth v. Gibson,* 536 Pa. 123, 638 A.2d 203 (1994). The initial search without a warrant was permissible because exigent circumstances existed. Police are not required to obtain a warrant if they have probable cause to believe someone is in imminent danger. *Id.* Under the totality of circumstances, which includes information obtained from the victim's grandmother, the admission from the defendant that the victim had been in his house, and, most importantly, hearing sounds of muffled crying, the police were justified in going upstairs. They were further justified in looking for the handcuff keys, so that the victim could be released, and in retrieving her

clothes so she did not have to travel to the hospital wrapped in a blanket. Any item not necessary for the care of the victim was left untouched until a warrant was obtained. Under these facts, a motion to suppress would have been unsuccessful. Hence, the failure to file a suppression motion cannot be the basis for an ineffectiveness claim.

Defendant's second ground for appeal is that:

"Appellant's trial counsel was ineffective in failing to emphasize to the trial court during cross-examination of the Commonwealth's witness, Glenn Hall, a DNA analyst, and in closing argument, that the DNA tests done on the sperm fraction of the DNA obtained excluded appellant as the primary source of that DNA. Trial counsel's inaction inured to appellant's prejudice in that the results were material to creating a reasonable doubt as to appellant's guilt of rape."

Defendant has misstated the testimony. Mr Hall testified that upon examination of the vulva swabs taken, the defendant could only be excluded from the *nonsperm* fraction, because that fraction was determined to be of female origin, and was consistent with the genetic markers of the victim. Further, he testified that the sperm count in the sperm fraction was so faint that they could not reach any conclusions about its source. In short, the tests results were not sufficient to include or exclude the defendant as the source of the sample. This testimony was repeated and clarified on cross-examination and on redirect examination. Since the testimony was *not* that the defendant was excluded, raising such an argument would have been futile. This allegation of ineffectiveness, too, must fail.

For all the foregoing reasons, the conviction was proper. The judgment entered on January 16, 1998, imposing the sentence of 17 1/2 years to 70 years incarceration should be affirmed.