## Commonwealth v. Snow

C.P. of Mercer County, no. 1448 Criminal 2005.

*Robert G. Kochems, assistant district attorney,* for Commonwealth.
*Randall T. Hetrick,* for defendant.

ST. JOHN, *J.,* March 28, 2006—

## CONCLUSIONS OF LAW

Defendant raises two issues in this omnibus hearing following his arrest for DUI when police responded to a domestic dispute. Defendant's wife gave the police permission to enter their home and question defendant. Defendant, however, told the police to leave when they located him taking a shower. The police ignored defen-

dant and ordered him out of the bathroom, conducted field sobriety tests in his home and arrested him for DUI.

First, defendant challenges the warrantless entry into defendant's home as well as the police officers' actions while in defendant's home as violative of the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution. Second, defendant also maintains that the provisions of the DUI statute with which he was charged violated the due process clauses of the United States Constitution as well as the Pennsylvania Constitution by being overly broad and/or void for vagueness.

As a preliminary matter, nowhere are the Fourth Amendment rights (and their Pennsylvania constitutional counterparts)[1] to be more scrupulously respected than in a person's home. Simply stated, "[a] man's home is *his* castle." See *e.g., Minnesota v. Carter,* 525 U.S. 83, 94 (1998). (emphasis in original) Or, as the Supreme Court opined more eloquently:

---

1. The Fourth Amendment of the Federal Constitution states that:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Constitution Amendment IV.

Article I, Section 8, the Fourth Amendment's state counterpart, provides:

"The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." Pennsylvania Constitution, Article I, Section 8.

"A man can still control a small part of his environment, his house; he can retreat thence from outsiders, secure in the knowledge that they cannot get at him without disobeying the Constitution. That is still a sizable hunk of liberty—worth protecting from encroachment. A sane, decent, civilized society must provide some such oasis, some shelter from public scrutiny, some insulated enclosure, some enclave, some inviolate place which is a man's castle." *Silverman v. United States,* 365 U.S. 505, 511 n.4 (1961). (citations omitted)

Pennsylvania's Supreme Court has echoed a similar sentiment: "Upon closing the door of one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society." *Commonwealth v. Shaw,* 383 A.2d 496, 499 (1978). (citations omitted)

While the Federal Constitution sets minimum standards of constitutional protection for each state to follow, Pennsylvania is free to exceed those constitutional protections when interpreting its own constitution. See *Commonwealth v. Edmunds,* 586 A.2d 887, 894 (1991). Moreover,

" 'As [the Supreme] Court has stated repeatedly in interpreting Article I, Section 8, that provision is meant to embody a strong notion of privacy, carefully safeguarded in this Commonwealth for the past two centuries.' The [Supreme] Court then concluded that the purpose of the exclusionary rule as developed in Pennsylvania was not solely to deter police conduct, as the United States Supreme Court had interpreted it, but rather was *'unshakably linked to a right of privacy in this Com-*

*monwealth.'"* *Commonwealth v. Matos,* 672 A.2d 769, 773 (1996). (citations omitted) (emphasis in original)

It is with this background in mind that the court must examine the legality of the officers' actions to gain entry into defendant's home and their subsequent actions with respect to defendant upon entering the home.

## I. *Officers' Entry into Defendant's Home and Their Actions Therein*

Generally, a warrant is required for a police officer to enter a person's home, and the absence of this warrant will make the entry unreasonable and in violation of the Fourth Amendment. See *Arizona v. Hicks,* 480 U.S. 321, 327 (1987). Such an entry is deemed to be unreasonable absent a well recognized exception to the warrant requirement. *Commonwealth v. Cleckley,* 738 A.2d 427, 429 (1999). One recognized exception to the warrant requirement is where "voluntary consent [to search] has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises." *Commonwealth v. O'Donnell,* 740 A.2d 198, 206 (1999). The other is a search based upon exigent circumstances. *Commonwealth v. Roland,* 637 A.2d 269, 270 (1994).

In this case, the police officers did not have a warrant to enter defendant's home. Therefore, in order for their entry into defendant's home and their subsequent search[2]

---

2. "The term 'search' as applied to [constitutional analysis of] searches and seizures is an examination of an individual's house, buildings or person, for the purpose of discovering contraband or some evidence of guilt to be used in the prosecution of a criminal action." *Commonwealth v. Gibson,* 638 A.2d 203, 205 (1994). In this case, the

in the instant case to be reasonable, the police officers would need to have either valid consent to enter and remain in the house or have exigent circumstances to enter and remain in the house.

### A. Consent To Enter, Search, and Remain in Defendant's House

Defendant here resided with his wife in their marital residence. The police responded to a telephone complaint from defendant's wife that he had been drinking and they had a verbal argument when she located him. She further complained that she was on her way home, as was defendant, and that she was afraid. Two police officers arrived at the marital residence at about the same time as defendant and his wife, who arrived in separate vehicles. The police officers talked to defendant's wife in their front yard while defendant went directly into his house. There was no evidence of domestic violence or a pending threat of imminent harm.

In this case, while the police never received defendant's permission to enter the premises, they did receive permission from defendant's wife while in the front yard. She jointly occupied and owned defendant's home and accordingly had every right to allow the police officers to enter defendant's house. This permission gave the police officers the right to enter defendant's residence and attempt to speak with defendant. In fact, defendant's wife opened the front door and led the police into their

---

police officers' entry into defendant's home and their subsequent questioning of defendant through his bathroom door was unquestionably a "search" for the purposes of Fourth Amendment and Article I, Section 8 analysis.

home. Essentially, this consent authorized the police under the consent exception to the warrant requirement to enter the home and get to defendant's bathroom door. However, this determination does not end the consent analysis on the facts of this case because the police officers' subsequent actions and their right to remain in defendant's home must also be analyzed by what occurred after they reached defendant's closed bathroom door where he was taking a shower, particularly in light of a very recent United States Supreme Court case.

The law is well settled under the Fourth Amendment, and its Pennsylvania counterpart, that third-party consent by a co-occupant of a home gives law enforcement adequate consent to enter and search a shared premises where the targeted occupant is not present to voice an objection. *United States v. Matlock,* 415 U.S. 164 (1974); *Commonwealth v. Hughes,* 836 A.2d 893 (2003). Until March 22, 2006, however, the law was unsettled as to whether police could rely on a third-party consent to enter and search a home where the targeted co-occupant was present and objected to the warrantless entry and search.[3] Police cannot now enter a home under the third-party consent exception where a co-occupant who is present objects to the warrantless entry. *Georgia v. Randolph,*

---

3. As the *Randolph* court noted, all four Federal Circuit Courts and most state courts which had addressed this legal issue "have concluded that consent remains effective in the face of an express objection." *Georgia v. Randolph,* 126 S.Ct. 1515, 1520 n.1 (2006). Legal commentators have also adopted this view. See Sharon E. Abrams, Comment, *Third-Party Consent Searches, the Supreme Court, and the Fourth Amendment,* 75 J. Crim. L. & Criminology 963 (1984). However, this decision was not uniform through the nation's state courts. See *Silva v. State,* 334 So.2d 559 (Fla. 1977). Pennsylvania's appellate courts have never answered this question.

126 S.Ct. 1515, 1523 (2006). The facts in *Randolph* differ from the facts of the case at bar because defendant here was present in the house when the police received consent to enter their home (unbeknownst to defendant) from defendant's wife who was outside the home, and defendant immediately voiced his objection to their warrantless presence when the police located defendant in his bathroom. Nonetheless, the rationale in *Randolph* is equally applicable here and the result is the same: the warrantless presence of police in a home must cease when a physically present co-occupant refuses to give police consent to remain in his home after they received unilateral consent from another co-occupant, absent another exception to the Fourth Amendment's warrant requirement.

In *Georgia v. Randolph,* the defendant and his wife were both present at their jointly owned home when the police arrived. *Id.* at 1519. The wife complained about the defendant's drug use and stated "that there were 'items of drug evidence' in the house" to police officers who were at the door of their house without a warrant. *Id.* The defendant expressly refused the officers permission to enter the premises, but his wife invited them upstairs where they found "a section of a drinking straw with a powdery residue [that the officer] suspected was cocaine." *Id.* The police left the house, obtained a search warrant, and found more evidence of drug use. *Id.* The defendant challenged the initial police entry into his house because of his objections and asked that the evidence found be suppressed. *Id.*

The Supreme Court noted that when considering reasonableness in Fourth Amendment consent to search

cases, great significance is "given to widely shared social expectations. . . ." *Id.* at 1521. The *Randolph* court began with this widely held social expectation in assessing the reasonableness of the police entry and search: "it is fair to say a caller standing at the door of shared premises would have no confidence that one occupant's invitation was a sufficiently good reason to enter when a fellow tenant stood there saying, 'stay out.' Without some very good reason, no sensible person would go inside under those conditions." *Id.* at 1522-23.

Because of this premise:

"[s]ince the co-tenant wishing to open the door to a third party has no recognized authority in law or social practice to prevail over a present and objecting co-tenant, his disputed invitation, without more, gives a police officer no better claim to reasonableness in entering than the officer would have in the absence of any consent at all." *Id.* at 1523.

From this consideration, the court pronounced that: "[w]e therefore hold that a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to [the physically present objecting resident] on the basis of consent given to the police by another resident." *Id.* at 1526.

This rule was not made without qualifications. The court reaffirmed the exigent circumstances exception to the warrant requirement by stating that: "where the defendant has victimized the third party . . . the emergency nature of this situation is such that the third-party consent should validate a warrantless search despite

defendant's objections." *Id.* (quoting 4 Wayne LaFave, *Search and Seizure* §8.3 at 161 (4th ed. 2004)).[4] Also, the court did limit its precise holding to this factual scenario, where two co-tenants are present at the door of the premises and one consents to their entry and the other objects. *Randolph,* 126 S.Ct. at 1527. However, the rationale in *Randolph* clearly dictates that the consent exception to the Fourth Amendment was not satisfied in the instant case.[5]

First, if a co-tenant at the entrance of a house has a widely shared social expectation that his objection to another party's entry is reasonable and should be obeyed, then it follows that a bathing co-tenant who raises this same objection, even if it is raised after the initial warrantless entry is likewise reasonable and should be honored. A reasonable guest, even if he or she were already in a house, would certainly not feel any more reason to stay in the house if a co-tenant ordered the guest out while bathing, than if the same co-tenant denied entry to the guest at the front door. It is uncontested here that defendant unequivocally told the police to get the "F . . ." out of his house. Findings of fact, March 8, 2006, ¶11. Defendant's objection from the bathroom in this case

---

4. The exigent circumstances exception to the warrant requirement will be discussed *infra* in this opinion.

5. As the Pennsylvania Supreme Court has repeatedly stated, "the federal constitution establishes certain minimum levels which are 'equally applicable to the [analogous] state constitutional provision.'" *Commonwealth v. Edmunds,* 586 A.2d 887, 894 (1991). (alterations in original) (citations omitted) Accordingly, because the consent exception to the Fourth Amendment is not satisfied in this case, the consent element of the analogous Pennsylvania constitutional provision, Article I, Section 8, likewise has not been satisfied in this case.

should therefore hold the same weight as a person raising this objection at the front door. In effect, defendant repudiated the warrantless presence of the police in his home upon discovering that was previously granted (unbeknownst to him) by his wife, which she was authorized to do and upon which the police properly relied. Thus, police cannot utilize the consent exception to the warrant requirement once it has been revoked and/or repudiated by any occupant who is present during the warrantless presence of the police.

Even if defendant's objection did not hold the same widely shared social expectation to immediately leave the home as if he were at the front door, then unquestionably there is a widely shared social expectation for a person to be free to take a shower uninterrupted by an unwelcome visitor if the showering co-tenant makes this point clear. In other words, if a co-tenant, while showering, demands to be left alone, no recognized authority in law or social practice exists for another co-tenant to allow unwelcome third parties to order the non-consenting co-tenant out of the bathroom. The warrantless presence of the police became unreasonable at this point for Fourth Amendment purposes. Likewise, absent exigent circumstances, there certainly is no recognized authority for those same unwelcome guests to coerce the showering co-tenant out of the bathroom with threats of serious harm, *i.e.,* using a taser gun and pepper spray, as the police did here. Therefore, defendant's express directive to the police that they leave his house dictates that the police officers immediately leave the home, or at the very least, leave defendant alone while he was showering, because no recognized authority in law or social prac-

tice gives defendant's wife's consent the authority to trump defendant's order for the police officers to leave.[6]

## B. Exigent Circumstances To Enter, Search, and Remain in Defendant's Home

As stated above, *Randolph* reaffirms the role of exigent circumstances in Fourth Amendment reasonableness analysis.[7] See *Georgia v. Randolph,* 126 S.Ct. 1515, 1521 (2006). "In determining whether exigent circumstances exist, a number of factors are to be considered." *Commonwealth v. Denshock,* 854 A.2d 553, 555 (Pa.

---

6. The court recognizes that the consent portion of this opinion extends the technical holding of *Randolph,* which only declares that an objecting co-tenant at the door of a residence makes police intrusion into that residence unreasonable. *Georgia v. Randolph,* 126 S.Ct. 1515, 1527 (2006). The *Randolph* court also made clear that police have no affirmative obligation to find a potentially objecting co-tenant in or around the residence and attempt to gain his or her approval to search in addition to the consenting co-tenant. *Id.* However, nowhere in its opinion does the Supreme Court attempt to address a factual situation where the police are already inside of a house pursuant to a third party's consent and a co-tenant orders them to leave the premises. Moreover, the court certainly never even approached this question upon the facts of this case, *i.e.,* a co-tenant showering in his own bathroom, who demands to be left alone, and is threatened with serious bodily injury if he does not immediately comply with the police officers' commands to come out of the bathroom or they will forcibly enter it and use a taser gun and/or pepper spray on him.

7. The Commonwealth in the omnibus hearing did not even mention exigent circumstances as a justification for their entry into defendant's residence. However, because the police officers did not have valid consent to support the extent of their search and subsequent seizure of defendant, the court will briefly examine whether exigent circumstances would have justified their actions within the home.

Super. 2004). The factors to be considered when determining whether exigent circumstances exist are:

"(1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, *i.e.,* whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified. . . .

"Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or a danger to police or other persons inside or outside the dwelling. . . . Nevertheless, 'police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.' " *Commonwealth v. Roland,* 637 A.2d 269, 270-71 (1994). (citations omitted)

First, in order for there to be the possibility of an exigency, there must be the clear showing of probable cause and the defendant's presence in the house. Certainly, defendant was present in his house when the police entered the residence and began to ask him questions through the closed bathroom door. The police here saw defendant enter his home. Findings of fact, March 8, 2006, ¶4. However, it is doubtful whether the police even had probable cause at this point to believe that defendant committed a crime. The only two possible crimes

of which the police had any suspicion were DUI and a possible summary harassment charge for a previous verbal altercation with defendant's wife. The police had no corroborating evidence to buttress the wife's complaints on either of these two charges, aside from several complaints of defendant's wife made to the police before they entered the home. See *id.* ¶¶2, 3, 4, 5, 12. In fact, the police had reason not to believe the complaints that defendant's wife made. For instance, defendant gave absolutely no outward indication to the police of his intoxication while entering his home or driving. See *id.* ¶12. Likewise, nothing in the record demonstrates that defendant acted in a threatening or violent manner while walking past the police and his wife. See *id.* ¶¶4, 12. However, even assuming that the police had probable cause on either of these crimes, the remaining factors do not weigh in favor of finding exigent circumstances.

Four factors weigh against the finding of exigent circumstances: (1) the gravity of the offenses was at worst a misdemeanor of the first degree; (2) there was no basis to reasonably believe that defendant was armed or that anyone was in danger; (3) there was a low likelihood of defendant escaping if the police attempted to get a warrant for his arrest; and (4) the police were not in hot pursuit of defendant. Three other factors weigh in favor of finding exigent circumstances: (1) the entry into the house was peaceful (*id.* ¶7); (2) the entry was in the daytime (see *id.* ¶18); and (3) physical evidence of alcohol impairment could have been eviscerated or altered had the officers gone to get a warrant.[8] Obviously, the results of

---

8. At the omnibus hearing, there was no evidence as to how long it would take to obtain a warrant. The testimony established, however,

promptly administered field sobriety tests and/or BAC tests would help the Commonwealth prove a DUI case against defendant, but these factors alone are inadequate to establish exigent circumstances. In sum, these factors are insufficient for the police to bear their heavy burden in establishing the existence of exigent circumstances in this case. See *Commonwealth v. Roland,* 637 A.2d 269, 270 (1994).

Accordingly, because the police officers' warrantless search and subsequent seizure of defendant was improper after defendant ordered them out of his house, defendant's motion to suppress the evidence gained from the warrantless search and seizure must be granted.

## II. *Constitutionality of the DUI Statute*

The issues presented in this portion of defendant's omnibus motion are identical to those already decided

---

the police officers did not fear at all for their safety or for defendant's, but they were concerned for his wife's safety. The police primarily wanted to talk to defendant to obtain his version of a verbal dispute he allegedly had earlier that day at a different location with his wife. The police had not observed any erratic driving or any signs of impairment when they saw defendant arrive in his car, exit his vehicle, walk to his house and up a flight of stairs, and enter the front door. However, the court is unable to identify any potential danger to defendant's wife as a very strong factor because the Commonwealth presented almost no evidence as to the threat of danger to defendant's wife and whether this threat was reasonable or not. The court has been left without sufficient evidence to properly evaluate this factor. Also, at the time that the police officers spoke to defendant, there was clearly no immediate danger to defendant's wife since defendant was showering and defendant's wife was apparently protected by the police, or had already left the scene with their child.

by this court in a consolidated opinion filed in the cases of *Commonwealth v. Toth,* 746 Criminal 2004; *Commonwealth v. Renzo,* 752 Criminal 2004; and *Commonwealth v. Foulk,* 1279 Criminal 2004, wherein the court denied the identical argument made by defendant in those cases that 75 Pa.C.S. §§3802(a)(2), (b), and (c) violated the Due Process Clauses of the Pennsylvania and the United States Constitutions. Therefore, the court hereby incorporates by reference and adopts the reasoning, analysis, and conclusions contained in the opinion filed at those criminal docket numbers on April 25, 2005, a copy of which was previously provided to defendant's attorney. Furthermore, the Superior Court has upheld the DUI statute over these challenges. *Commonwealth v. McCoy,* 895 A.2d 18 (Pa. Super. 2006). One case is currently pending before the Pennsylvania Supreme Court on these identical issues: *Commonwealth v. Duda,* CC no. 200413158 (Allegheny Cty. C. P. Aug. 9, 2005), *appeal docketed,* 24 WAP 2005 (Pa. July 15, 2005).

Hence this order:

## ORDER

And now, March 28, 2006, for the reasons set forth in the foregoing conclusions of law, the defendant's omnibus motion is granted in part and denied in part. Defendant's omnibus motion in the nature of a motion to suppress evidence is granted. Accordingly, any and all evidence obtained following defendant's demands from his bathroom to be left alone and for the police to leave his house on August 28, 2005, is suppressed. However, defendant's constitutional challenge to 75 Pa.C.S. §§3802(a)(2), (b), and (c) is denied.