J-S06022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN RICHARD VAZQUEZ | |
| Appellant | No. 536 MDA 2015 |

Appeal from the Judgment of Sentence February 19, 2015
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0005723-2013

BEFORE:  PANELLA, J., MUNDY, J., and STEVENS, P.J.E.*

MEMORANDUM BY MUNDY, J.:                    **FILED MARCH 28, 2016**

Appellant, John Richard Vazquez, appeals from the February 19, 2015 aggregate judgment of sentence of nine to 23 months' incarceration followed by three years' probation, imposed following his conviction at a bench trial of firearms not to be carried without a license and receiving stolen property.[1] After careful review, we affirm.

The trial court summarized the factual and procedural background of this case as follows.

> On August 28, 2013, Appellant was arrested and charged with firearms not to be carried without a license, and receiving stolen property.  A counseled omnibus pre-trial motion was filed on April 7, 2014, seeking to suppress certain physical evidence and

_____

[1] 18 Pa.C.S.A. §§ 6106(a)(2) and 3925, respectively.

*Former Justice specially assigned to the Superior Court.

statements as the fruit of an allegedly unconstitutional and illegal search of Appellant's person and property.

A suppression hearing was held on October 17, 2014, at the conclusion of which [the suppression court] denied the motion in its entirety on the record.

Trial Court Opinion, 4/22/15, at 1-2

At the suppression hearing, Officer Anthony Weaver of the Lancaster City Bureau of Police was the only witness. Based on his testimony, the suppression court made the following findings.[2]

_____

[2] We note that the suppression court did not comply with Pennsylvania Rule of Criminal Procedure 581(I), failing to contemporaneously record its findings of fact. Its findings now belatedly appear in its Rule 1925(a) opinion. Our Supreme Court has lamented such noncompliance, noting as follows.

We stress, however, the essential purposes served by the Rule, and we disapprove of non-compliance with its unambiguous mandate. A specific and contemporaneous announcement of suppression findings of fact and conclusions of law serves at least two salutary purposes. First, it permits the losing party to make a more intelligent assessment of whether or not to burden the appellate justice system with an appeal of the suppression ruling…. Second, it is often the case … that the suppression judge is different from the trial judge yet, if there is a conviction, it will be the trial judge who will be responsible for preparation of the Rule 1925 opinion for appeal.

*Commonwealth v. Millner*, 888 A.2d 680, 688-689 (Pa. 2005) (footnote omitted). As the noncompliance in this case does not hamper our review, we need not remand. *Compare*, *id.* (declining to remand for compliance
*(Footnote Continued Next Page)*

The evidence at the suppression hearing established the following facts. On August 28, 2013, at approximately 2:35 a.m., Officer Anthony Weaver of the Lancaster City Police parked his marked police cruiser near an intersection in a high crime area of the City as part of the community policing efforts to maintain high visibility, reduce crime and protect the citizens. Just minutes after parking, Officer Weaver observed Appellant wearing a backpack and walking "at a brisk pace" east on East End Avenue. Appellant "definitely saw" Officer Weaver who was in full uniform and in a marked police cruiser on East End Avenue. Officer Weaver then observed, through his rear view mirror, a Chrysler sedan pull up to the intersection of South Franklin Street and East End Avenue and illegally park in the intersection. Appellant crossed the street and entered the back of the vehicle. Officer Weaver made the decision to stop the vehicle for a traffic violation. The Chrysler began traveling west on East End Avenue and then south on Stevens Avenue. Officer Weaver followed the vehicle for a short distance while running a check on the registration plate, and eventually effectuated a traffic stop in the first block of South Broad Street in the City of Lancaster.

When the vehicle was pulled over, it was observed that there were four occupants in the vehicle. Officer Weaver called for backup and then approached the vehicle on the passenger side. After receiving the identification from the four occupants, Officer Weaver ordered the occupants to exit the vehicle at which time they were patted down and searched for weapons. The police then directed the occupants to sit on the curb.

_(Footnote Continued)_ ─────────────

with Rule 581(I) where review was not hampered and for judicial economy, **with Commonwealth v. Landis**, 89 A.3d 694, 703 (Pa. Super. 2014) (remanding for compliance with Rule 581(I) where it was unclear from the Rule 1925(a) opinion whether the suppression court employed the correct standard).

While the occupants were seated on the curb, the police did a protective sweep of the car. Inside the car, a backpack was located on the rear seat, directly behind the driver's seat, where Appellant had been sitting. Officer Weaver opened the unlocked backpack and saw a laptop computer and a Ruger 9 millimeter handgun inside a pocket. After locating the handgun, Officer Weaver asked Appellant whether he had a permit to carry the firearm, to which he responded, he did not. Appellant was then placed under arrest and taken to the Lancaster City Police Station. The other occupants were released at the scene, after a traffic citation was issued to the driver.

…

In the instant case, Officer Weaver testified that this vehicle stop occurred in a high crime area of the City, where he had personally made over 100 arrests, many for drug and gun-related crimes, and had been part of an officer-involved shooting. As part of the community policing in this area, Officer Weaver could attest to the heavy drug traffic, the high volume of police calls for service, the large number of citizen complaints of criminal activity, and the drug and prostitution investigations being conducted by the Selective Enforcement Unit of the Lancaster City Police in this particular part of the City. Additionally, these events happened in the middle of the night, which creates a heightened level of danger to a police officer, especially during a traffic stop. Moreover, after the traffic stop, the front seat passenger engaged in the furtive movement of leaning forward and nearly touching his toes on the floorboard multiple times. The other rear seat passenger also exhibited extreme nervousness.

Based upon his training and experience in conducting over 1000 traffic stops, his 14 years of service as a police officer, his special training in identifying armed individuals, and the particular facts

- 4 -

of this traffic stop, Officer Weaver believed that "there was a high probability that there could be a weapon in that vehicle, and [he] was extremely concerned."

*Id.* at 3-5, 9 (footnotes and citations omitted).

The case proceeded to a stipulated bench trial on December 19, 2014, and concluded with a verdict of guilty on the firearms charge and the receiving stolen property charge. Following the verdict, sentencing was deferred pending a pre-sentence investigation.

On February 19, 2015, Appellant was sentenced to a term of 3 to 23 months['] incarceration in Lancaster County Prison on the firearms charge. Appellant received a concurrent split sentence of 9 to 23 months['] incarceration followed by 3 years['] probation on the felony charge of receiving stolen property.[3] Appellant filed no post sentence motions. A timely appeal to the Superior Court of Pennsylvania was filed on March 20, 2015.

*Id.*, at 1-2 (footnotes and citations omitted).[4]

Appellant raises the following question for our review.

Did the trial court err in denying Appellant's Motion to Suppress where police had neither reasonable suspicion nor probable cause to justify a stop of the vehicle in which Appellant was a passenger, and where police had neither reasonable suspicion nor

---

[3] The trial court's sentence also granted Appellant work release and authorized transition from incarceration to electronically monitored house arrest after three months, contingent on Appellant being a "model prisoner." N.T., 2/19/15, at 11.

[4] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

probable cause to conduct a sweep of the vehicle, including Appellant's backpack, for weapons?

Appellant's Brief at 5. Appellant's single question raises two distinct sub-issues. First, Appellant challenges the validity of the traffic stop, and second, Appellant challenges the safety sweep of the vehicle and Appellant's backpack. We address each sub-issue *seriatim*.

Our review of a trial court's suppression ruling is guided by the following.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review. **Commonwealth v. Jones**, 605 Pa. 188, 988 A.2d 649, 654 (2010) (citations, quotations, and ellipses omitted). Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress. **See In re L.J.**, 622 Pa. 126, 79 A.3d 1073, 1083–1087 (2013).

**Commonwealth v. Mathis**, 125 A.3d 780, 783 (Pa. Super. 2015).

Appellant first contends that the vehicle stop effected by Officer Weaver was without reasonable suspicion or probable cause. Appellant's

Brief at 18. "The issue of what quantum of cause a police officer must possess in order to conduct a vehicle stop based on a possible violation of the Motor Vehicle Code is a question of law, over which our scope of review is plenary and our standard of review is *de novo*." **Commonwealth v. Holmes**, 14 A.3d 89, 94 (Pa. 2011).

> [W]hen considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop.

**Commonwealth v. Salter**, 121 A.3d 987, 993 (Pa. Super. 2015); **see also** **Commonwealth v. Feczko**, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*), *appeal denied*, 25 A.3d 327 (Pa. 2011) (holding a police officer must have probable cause to justify a stop of a vehicle when the investigation subsequent to the stop serves no "investigatory purpose relevant to the suspected violation").

Instantly, the trial court addressed Officer Weaver's justification for the initial stop of the vehicle for a violation of Section 3353(a)(1)(iii) and (iv) of the Vehicle Code, *i.e.*, stopping in an intersection or on a crosswalk, under

a reasonable suspicion standard.[5]   Trial Court Opinion, 4/22/15, at 7-8.

Officer Weaver testified, however, that he made the stop because he observed the vehicle stop in an intersection and crosswalk in violation of Section 3353(a)(1)(iii) and (iv).   Because the stop could yield no further investigatory information as to whether a violation of Section 3353(a)(1)(iii) and (iv) occurred, we conclude that the police were required to have probable cause for the stop.  **See Salter**, **supra**.

Determining whether probable cause exists requires consideration of the totality of circumstances.  **Commonwealth v. Thompson**, 985 A.2d 928, 931 (Pa. 2009).  "The police have probable cause 'where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been … committed.'"  **Commonwealth v. Rogers**, 849 A.2d 1185, 1192 (Pa. 2004), *quoting*, **Commonwealth v. Gibson**, 638 A.2d 203, 206 (Pa. 1994).

As noted, Officer Weaver testified that he stopped the vehicle after it had picked up Appellant for violating Section 3353(a)(1)(iii) and (iv) of the Vehicle Code.  N.T., 10/17/14, at 20.  That section provides as follows.

---

[5] Appellant's omnibus pretrial motion initially framed the issue as the police lacking "reasonable suspicion to stop the vehicle."  Omnibus Pretrial Motion, 4/8/14, at 2 ¶4.   At the suppression hearing, Appellant couched his argument as the police lacking "probable cause" for the stop based on the alleged traffic violation.  N.T., 10/17/14, at 59.  In their respective appellate briefs, Appellant and the Commonwealth agree that probable cause is the proper standard for the traffic stop in this case.  **See** Appellant's Brief at 18; Commonwealth's Brief at 10.

§ 3353. Prohibitions in specified places

**(a) General rule.--**Except when necessary to avoid conflict with other traffic or to protect the safety of any person or vehicle or in compliance with law of the directions of a police officer or official traffic-control device, no person shall:

    (1) Stop, stand or park a vehicle:

…

        (iii) Within an intersection.

        (iv) On a crosswalk.

…

Pa.C.S.A. § 3353.  Officer Weaver testified that he observed the vehicle "park[] in the traffic lanes on the corner of South Franklin and East End." N.T., 10/17/14, at 18.  Officer Weaver testified that another vehicle had to enter the other lane to go around the stopped vehicle.  ***Id.***[6]  He also testified that the vehicle was blocking the intersection and the crosswalk.  ***Id.*** at 20.

Appellant argues the suppression court erred in crediting Officer Weaver's testimony.

> Officer Weaver claimed that, looking in his side and rear view mirrors, he could see the location of a vehicle in the dark, parked two blocks behind him. This testimony was simply incredible.  At best, Officer Weaver could only estimate the location of

---

[6] Officer Weaver misstated the street the passing vehicle was travelling on when it encountered the stopped vehicle.  N.T., 10/17/14, at 18.  Appellant argues this is another reason to discredit the Officer's testimony.  ***See*** Appellant's Brief at 20.

> the vehicle, based on his limited ability to see from nearly two blocks away.
>
> …
>
> "Despite the inconsistencies and incredible nature of Officer Weaver's testimony, the trial court improperly chose to believe this testimony…."

Appellant's Brief at 19-20 (citation and footnote omitted).

As we related in the summary of our standard of review, we must view the evidence in the light most favorable to the Commonwealth to determine if there is support for the suppression court's findings. **See Mathis**, **supra**. Instantly, Officer Weaver's testimony about his observation of the vehicle stopping in a fashion that blocked a crosswalk and intersection, clearly supports the suppression court's factual findings. Furthermore, such observations were "sufficient to warrant a person of reasonable caution in the belief that an offense has been … committed," affording Officer Weaver probable cause to stop the vehicle. **See Rogers**, **supra**. Therefore, we conclude Appellant's first sub-issue is meritless.

Appellant next claims that even if the stop was proper, Officer Weaver lacked reasonable suspicion that any of the occupants were armed or dangerous as to justify the weapon pat down and sweep search of the vehicle, including Appellant's backpack. Appellant's Brief at 22. Appellant asserts that Officer Weaver's claimed concerns about Appellant's walking and being picked up at night in a high-crime area, the "stretching" movements of the front-seat passenger, and the rapid heartbeat of the other

back-seat passenger, did not constitute reasonable suspicion that anyone in the car was armed or dangerous, or that any criminal activity was in progress. *Id.* at 23-24.

> Contrary to the trial court's finding, these separate actions by two of the passengers did not reasonably lead Officer Weaver to believe that there might be a weapon in the vehicle or in [Appellant's] backpack. Officer Weaver did not possess the requisite suspicion to believe that there was a weapon in [the driver's] vehicle, or in [Appellant's] backpack.

*Id.* at 24.

The parties agree that the weapon sweep constituted an investigative detention governed by *Terry v. Ohio*, 392 U.S. 1 (1968), and required the police to have reasonable suspicion that criminal activity was underway, or that an occupant was armed and dangerous. Appellant's Brief at 22; Commonwealth's Brief at 14.

> "A *Terry* search, unlike a search without a warrant incident to a lawful arrest, is not justified by any need to prevent the disappearance or destruction of evidence of crime. The sole justification of the search is the protection of police officers and others nearby." [*Michigan v. Long*, 463 U.S. 1032, 150 n14 (1983)] (citation and quotation omitted). The Court stated that an officer must therefore have reasonable suspicion that the person subject to the stop has a weapon in order to conduct a lawful search of the passenger compartment of a vehicle at the time of the stop. *Id.*
>
> In *Commonwealth v. Morris*, 537 Pa. 417, 644 A.2d 721 (1994), our Supreme Court applied the standard announced in *Long* to validate a vehicle search conducted during a traffic stop, finding the reasoning set forth in *Long* to be applicable to

> Article I, Section 8 of the Pennsylvania Constitution.
> *Id.* at 422 n.3, 644 A.2d at 724 n.3.

*Commonwealth v. Cartagena*, 63 A.3d 294, 299 (Pa. Super. 2013) (*en banc*) (footnotes omitted), *appeal denied*, 70 A.3d 808 (Pa. 2013). "An officer may conduct a *Terry* [search] for weapons if a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Commonwealth v. Kondash*, 808 A.2d 943, 948 (Pa. Super. 2002) (internal quotation marks and citations omitted). Such a belief must be based on "specific and articulable facts, that the detained individual may be armed and dangerous." *Commonwealth v. Clemens*, 66 A.3d 373, 381 (Pa. Super. 2013) (citation omitted). Further, a determination of whether reasonable suspicion exists must be based on the totality of the circumstances and involves a fact-specific case-by-case inquiry. *Commonwealth v. Scarborough*, 89 A.3d 679, 683 (Pa. Super. 2014), *appeal denied*, 102 A.3d 983 (Pa. 2014). "[W]here a sufficient number of [circumstances] coalesce, reasonable suspicion will be found." *Id.*

> The courts also have plainly held that officer safety concerns are heightened during traffic stops. The United States Supreme Court recently emphasized that "[t]raffic stops are especially fraught with danger to police officers, so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." *Rodriguez v. United States*, 135 S.Ct. 1609, 1616 (2015) (internal quotation marks and citations omitted). Safety concerns are even greater when the motor vehicle stop occurs at night.

***Commonwealth v. Chase***, 960 A.2d 108, 120 (Pa. 2008).

Our review of the suppression hearing transcript leads us to conclude the suppression court's findings are supported and the totality of the circumstances supports Officer Weaver's reasonable suspicion that one or more of the occupants of the vehicle might be armed. Here, the combination of factors included the fact that the activity occurred late at night in a high crime area. In addition, Officer Weaver, upon approaching the vehicle, noted two passengers exhibited excessive nervousness. One did so by stretching in a stress-induced "flight or fight" manner, including repeatedly reaching down to his feet and the floorboard, and the other passenger exhibited extreme nervousness and an accelerated heartbeat. N.T., 10/17/14, at 25-27. We have previously held that a similar set of circumstances supported a reasonable suspicion that justified a ***Terry*** search for weapons. ***See Commonwealth v. Buchert***, 68 A.3d 911 (Pa. Super. 2013) (holding police had a reasonable suspicion for a weapon search where, upon approaching a vehicle during a nighttime traffic stop, the police noticed the defendant exhibiting nervous behavior and furtive movements), *appeal denied*, 83 A.3d 413 (2014). Instantly, there was the additional consideration of the area being a high-crime neighborhood. ***See Commonwealth v. Thompson***, 985 A.2d 928, 936 (Pa. 2009) (noting the fact that a stop occurs in a high crime area when coupled with other factors may support reasonable suspicion of dangerous or illegal activity).

- 13 -

Appellant also argues that the nervousness and behavior of the other passengers did not justify a search of his person and his backpack. Appellant offers no authority that, once a reasonable suspicion that a member of a group may be armed, a police officer is limited in searching only the members of the group exhibiting certain behavior, and we reject the contention. While a *Terry* search is limited in scope, once justified, an officer may search the entire area in which a weapon might be readily accessible. *See*, *e.g.*, *Commonwealth v. Murray*, 936 A.2d 76 (Pa. Super. 2007) (upholding a protective search of the interior of a vehicle where police officers stopped a defendant for a motor vehicle violation, in a high crime area, and officers saw "excessive movement" inside the car). We therefore conclude Appellant's second sub-issue is also meritless.

In light of the foregoing, we discern no error by the suppression court in denying Appellant's omnibus pretrial motion to suppress the evidence obtained in the traffic stop and *Terry* search of Appellant's backpack. Accordingly, we affirm the February 19, 2015 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/2016

- 14 -