J-S59002-19
J-S59003-19
J-S59046-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JULIAN  SEWELL | : | |
| | : | |
| Appellant | : | No. 287 EDA 2019 |

Appeal from the Judgment of Sentence Entered November 20, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008072-2016

\*\*\*\*\*

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JULIAN  SEWELL | : | |
| | : | |
| Appellant | : | No. 288 EDA 2019 |

Appeal from the Judgment of Sentence Entered November 20, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008073-2016

\*\*\*\*\*

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JULIAN  SEWELL | : | |
| | : | |
| Appellant | : | No. 286 EDA 2019 |

J-S59002-19
J-S59003-19
J-S59046-19


Appeal from the Judgment of Sentence Entered November 20, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008071-2016


BEFORE: LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED DECEMBER 30, 2019**

Julian Sewell appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after he was found guilty of criminal mischief[1] and related offenses.[2]  On appeal, he contests the trial court's denial of his pre-trial motion to suppress the warrantless search of his car and the sufficiency of the evidence for his criminal mischief conviction. After careful review, we reverse.

The trial court summarized the facts of the case as follows:

> On June 9, 2016, at approximately 12:00 a.m., Officers William Fritz and Brandon McPoyle were traveling southbound on 23rd Street when they spotted [Sewell] driving a dark 2009 Nissan Altima in the same direction.  Fritz noticed [Sewell]'s heavily[-] tinted car windows and stopped him at the intersection of 21st Street and Carpenter Street.  The officers exited their vehicle and

_____

[1] 18 Pa.C.S.A. § 3304(a)(2) (criminal mischief).  Sewell was also convicted, on two other docket numbers, of the following offenses:  firearms not to be carried without a license; carrying a firearm in public; fleeing or attempting to elude an officer;  possessing an instrument of crime (PIC); simple assault; and recklessly endangering another person (REAP).  None of these other convictions on the two other docket numbers, however, is being challenged in the current appeal.  **See infra** n.5.

[2] We have *sua sponte* consolidated the separate appeals, which involve the same underlying criminal episode and issues, for ease of disposition.  **See** Pa.R.A.P. 513 (when same question involved in two or more appeals in different cases, "the appellate court may, in its discretion, order them to be argued together  . . . as if but a single appeal.").

- 2 -

approached [Sewell]'s car, Fritz on the driver side and McPoyle on the passenger side. [Sewell] (the vehicle's only occupant) provided his license and vehicular documentation to Fritz, but the name on the license he presented to Fritz was "Oman Sewell." Fritz then returned to his squad car to verify [Sewell]'s information in the police database.

Fritz initially looked for the name on the license ("Oman Sewell") in the PennDOT database, but he found a profile that had a different name ("Julian Sewell") in a secondary database that matched the birthdate on [Sewell]'s license. The profile photos also resembled [Sewell]. After noticing these discrepancies, Fritz concluded that [Sewell] may have had a suspended license. When Fritz returned to [Sewell]'s car to question him about the discrepancy between his license and PennDOT's information, [Sewell] became nervous and gave an incoherent explanation. Fritz then went back to his squad car to verify his information before returning [Sewell]'s license and documents to him.[3]

Fritz then asked [Sewell] if there was anything in the car that the officers should be made aware, and he replied that there was not. Fritz next asked whether he could search the car, and [Sewell] consented. When Fritz asked [Sewell] to open the center console, he complied, but Fritz found no contraband. However, when Fritz asked [Sewell] to open the glove compartment, he got "nervous," began speaking quickly, and said it was locked. When Fritz suggested that he unlock it with the ignition key, [Sewell] responded that the compartment was broken. At that moment, Officer McPoyle reached inside the passenger window, opened the glove compartment, and discovered a loaded handgun.

After McPoyle secured the handgun and alerted Fritz, both officers backed away from the vehicle with their firearms drawn. Meanwhile, [Sewell] reversed his car and slammed into the front of the officers' squad car. The squad car was pushed back several feet, narrowly missing [Officer] McPoyle as he moved behind [Sewell]'s car to reposition himself next to Fritz. Although Fritz ordered [Sewell] to stop the car, he sped southbound on 21st

_____

[3] Officer Fritz testified that there was nothing he could do at that time because the license issue was something "[t]hat gets handled on the back end with PennDOT [and] has nothing to do with the actual stop at that point." N.T. 7/31/18, at 28-29.

> Street. Unable to pursue [Sewell], Fritz radioed for backup. Shortly thereafter, [Sewell] was apprehended. Video footage documenting the entire incident was recovered from nearby cameras and presented as evidence at [Sewell]'s trial.

Trial Court Opinion, 6/5/19, at 3-5 (footnotes omitted).

On March 13, 2017, Sewell filed a pre-trial motion to suppress, claiming that the police illegally searched his car without a warrant, the consent of the vehicle's owner, or probable cause. Sewell argued that any evidence uncovered from the improper search was "the fruit of the poisonous tree" and must be suppressed. On June 1, 2017, a suppression hearing was held before the Honorable William J. Mazzola. On June 21, 2107, the court denied Sewell's motion.[4] Sewell proceeded to a waiver trial before the Honorable Glynnis D. Hill,[5] after which he was found guilty of the above-stated offenses. On November 20, 2018, the trial court sentenced Sewell to 3-6 years' incarceration for carrying a firearm without a license (CP-51-CR-0008071-2016) and a consecutive term of 1-2 years of imprisonment for criminal mischief, with a consecutive probationary term of 2 years for fleeing (CP-51-

_____

[4] We note with disapproval the court's failure to comply with Pa.R.Crim.P. 581(I), especially where the suppression court judge has not written an opinion with regard to his suppression ruling. *See* Pa.R.Crim.P. 581(I) ("At the conclusion of the hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought.").

[5] On July 19, 2017, the defense requested a judicial recusal which the court granted. The case was later assigned to the Judge Hill, on July 30, 2018.

CR-0008073-2016). No further penalties were imposed on the remaining charges. *See supra* n.1.

Sewell filed a timely notice of appeal and Pa.R.A.P. 1925(b) court-ordered concise statement of errors complained of on appeal.[6] Sewell raises the following issues for our consideration:

(1) Did the [trial] court err in denying . . . Sewell's [m]otion for the [s]uppresion of [p]hysical [e]vidence where police conducted a warrantless search of [Sewell's] motor vehicle subsequent to an illegal detention, without probable cause, and without the voluntary consent of [Sewell], in violation of Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution?

(2) Was the evidence at trial insufficient as a matter of law to establish the crime of [c]riminal [m]ischief (18 Pa.C.S. § 3304(a)(2)) where the evidence failed to establish beyond a reasonable doubt that [Sewell] "intentionally or recklessly tamper[ed] with tangible property of another so as to endanger person or property," and where the evidence did not prove beyond a reasonable doubt that the pecuniary loss exceeded $5,000 or resulted in interruption/impairment of public services, as required to grade it as a felony of the third degree?

Appellant's Brief, at 2.

---

[6] On January 11, 2019, Sewell petitioned the trial court for leave to file notices of appeal *nunc pro tunc* to comply with the dictates of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018). In **Walker**, our Supreme Court held that that under Pa.R.A.P. 341 the "proper practice . . . is to file separate appeals from an order that resolves issues arising on more than one docket [and t]he failure to do requires the appellate court to quash the appeal." **Id.** at 977. Because the trial court granted Sewell's petition and he has filed three separate notices of appeal for each docket below, we find that he has complied with **Walker**.

In his first issue, Sewell claims that the police conducted an illegal, warrantless search of the glove compartment of his vehicle without probable cause and without his voluntary consent.

Our review of the suppression court's denial of a motion to suppress is governed by the following principles:

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. Where the [Commonwealth] prevailed in the suppression court, we may consider only the evidence of the [Commonwealth] and so much of the evidence for the [defense] as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

**Commonwealth v. Cartagena**, 63 A.3d 294, 298 (Pa. Super. 2013) (en banc) (citation omitted).

Here, the officers validly stopped Sewell's vehicle for a Motor Vehicle Code violation,[7] excessively tinted windows.[8] When they approached his vehicle, Sewell handed Officer Fritz his license, registration and a change of address form. When the officer ran a check of the documents, the birth date and name on the license did not match what was in the prison release system for Sewell. In addition, the system revealed information that Sewell had between five to ten prior police assaults and firearms violations. When Officer Fritz returned to Sewell's vehicle to clarify the inconsistent identification information, the officer testified that Sewell was "visibly nervous," "was kind of shaking," and was "talking quickly." N.T. Trial (Waiver), 6/1/17, at 14-15. At that point Officer Fritz returned Sewell's paperwork and asked if there was anything in the car that he needed to know about. *Id.* at 15. Sewell responded, "no." *Id.* Officer Fritz then asked Sewell if he would mind if he

_____

[7] We note that the trial court incorrectly states that "[i]n order to effectuate a lawful stop, 75 Pa.C.S.A. § 6308 requires the officer to have 'articulable and reasonable grounds' . . . [or] reasonable suspicion to believe the vehicle or its driver was violating the Vehicle Code." Trial Court Opinion, 6/4/19, at 5. However, in **Commonwealth v. Chase**, 960 A.2d 108 (Pa. 2008), our Supreme Court reasoned that "a vehicle stop based solely on offenses not 'investigatable'[, like window tint,] cannot be justified by a mere reasonable suspicion, because the purposes of a **Terry** stop do not exist—maintaining the *status quo* while investigating is inapplicable where there is nothing further to investigate. [Thus, a]n officer must have probable cause to make a constitutional vehicle stop for such offenses." **Id.** at 116.

[8] **See** 75 Pa.C.S.A. § 4524(e))(1) ("No person shall drive any motor vehicle with any sun screening or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle.").

- 7 -

searched his vehicle; Sewell replied, "No, I don't have a problem with that."

*Id.* At that point, Officer Fritz asked Sewell to open the center console of the

vehicle; Sewell complied and a pill bottle containing change was found. *Id.*

at 16. When Office Fritz attempted to open the locked, front driver's side

door, Sewell voluntarily unlocked the door and opened it for him; the officer

did not find any incriminating evidence in the door pocket, door handle well,

or on the driver's side floor. *Id.* at 16-17. Finally, when Officer Fritz asked

Sewell if he had anything in the glove box/compartment, the officer noted that

Sewell "was kind of fumbling around with words . . . but . . . essentially told

[him] it [was] locked." *Id.* at 17. Sewell then replied that the glove box was

broken and would not open. *Id.* at 51. At that point, Officer McPoyle reached

into the vehicle, through the passenger-side window, and opened the glove

box, revealing a loaded .9 millimeter Ruger handgun. *Id.*

We employ the following test to determine whether the search of

Sewell's glove compartment was consensual: "[t]o establish a valid

consensual search, the prosecution must first prove that the consent was

given during a legal police interaction, or if the consent was given during an

illegal seizure, that it was not a result of the illegal seizure; and second, that

the consent was given voluntarily." *Commonwealth v. Reid*, 811 A.2d 530,

544 (Pa. 2002) (citations omitted and emphasis added).

Sewell argues that while he may have consented to the search of

"certain portions of his car," he "unequivocally denied the officers consent to

search his glove box." Appellant's Brief, at 13. Sewell contends that while he "***voluntarily***" opened the driver's door and the center console for Officer Frisk, he specifically refused to open the glove box for the officer. ***Id.*** (emphasis in original).

It is well established that the scope of an individual's consent turns on the mind of the person consenting and not of the officer. ***Commonwealth v. Poteete***, 418 A.2d 513, 517 (Pa. Super. 1980). The standard for measuring the scope of an individual's consent is one of "objective reasonableness." ***Reid***, 811 A.2d at 549. We do not ascertain the scope of consent from the individual's subjective belief or the officer's understanding based on his or her training and experience, but based on "what . . . the typical reasonable person would have understood by the exchange between the officer and the suspect." ***Id.***

In ***Commonwealth v. Smith***, 77 A.3d 562, 568-69 (Pa. 2013), our Supreme Court recognized:

> [T]he legality and constitutionality of warrantless, but consented[-] to searches and seizures are examined objectively under a totality of the circumstances test to determine whether the consent was "the product of an essentially free and unconstrained choice" and not the result of coercion or duress. ***Commonwealth v. Strickler***, [] 757 A.2d 884, 901 (Pa. 2000). Under this maxim, no one fact, circumstance, or element of the examination of a person's consent has talismanic significance. ***Commonwealth v. Gillespie***, [] 821 A.2d 1221, 1225 n.1 (Pa. 2003). [I]t is a court's function to determine whether a criminal defendant voluntarily and knowingly gave his consent to be subjected to a search or seizure as contemplated by the Fourth Amendment and Article I, Section 8.

*Id.* (citation omitted)."

The trial court found that Sewell voluntarily consented to the search of his vehicle, and, thus, the court properly upheld the warrantless search. In coming to this conclusion the court noted: "(1) [Sewell] gave the officers permission to search his vehicle; (2) Officer McPoyle heard [Sewell] give [verbal] consent; and (3) [Sewell's] consent was not given under duress or coerc[ion]." Trial Court Opinion, 6/15/19, at 8. *See Commonwealth v. Smith*, 77 A.3d 562, 573 (Pa. 2013) (for consent to be voluntary it must be "the product of essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne –under the totality of the circumstances."). The trial court further noted that under case law, the officers were not required to notify Sewell about his right to refuse their request to search the vehicle where his consent was clearly voluntary. *Id.*, citing *Commonwealth v. Cleckley*, 738 A.2d 427, 433 (Pa. 1999).[9]

Based on a totality of the circumstances surrounding the stop and search, *Smith*, *supra*, we agree that the trial court properly denied Sewell's motion to suppress where Sewell gave Officer Fritz voluntary consent to search his vehicle. Officer Fritz asked Sewell if he would mind if he searched the vehicle and Sewell unequivocally replied that he did not have a problem with him doing that. While Sewell physically opened the center console and

---

[9] Officer Fritz specifically testified that he did not have Sewell sign any consent to search form. N.T. Suppression Hearing, 6/1/17, at 44.

the driver's door at Officer Fritz's request, he did not "refuse" to open the glove box for the officer. Rather, he told the officers that it was locked and/or broken. At that point, the officers had no reason to believe that Sewell was no longer voluntarily and knowingly giving his consent to search the car. **Cf. Commonwealth v. Valdivia**, 195 A.3d 855 (Pa. 2018) (while reasonable person in defendant's position would have expected police officers at scene to conduct immediate hand search of defendant's van, reasonable person would not have understood his consent to extend to dog sniffing search occurring 40 minutes following consent for search of vehicle). Finally, there is nothing in the certified record that indicates the officers coerced Sewell into providing his consent. **See Commonwealth v. Strickler**, 757 A.2d 884, 889, 901 (Pa. 2000). Accordingly, we find no merit to Sewell's first claim.

Sewell next argues that the evidence was insufficient to prove he was guilty of criminal mischief.[10] While Sewell admits that he damaged the officers' police cruiser as he fled the crime scene, he specifically claims that

---

[10] The trial court points out that, in closing argument, counsel noted, "[a]s it relates to the charge of criminal mischief, I don't have any argument, Your Honor, the car was damaged, it was. That's not something I would disrespect this Court to try and argue and say it wasn't." N.T. Trial, 7/31/18, at 176. This statement does not waive Sewell's sufficiency argument on appeal where he contests the "tampering" element of section 3304(a)(2) and consistently agrees that he caused damage to the officers' police car.

he did not "tamper with tangible property" as the crime is defined under 18

Pa.C.S.A. § 3304(a)(2), the specific subsection for which he was charged.[11]

When presented with a claim that the evidence is insufficient to sustain

a conviction:

> [A]n appellate court, viewing all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth as the verdict winner, must determine whether the evidence was sufficient to enable the fact finder to find that all of the elements of the offenses were established beyond a reasonable doubt.

***Commonwealth v. Hawkins***, 701 A.2d 492, 499 (Pa. 1997). Furthermore,

"[t]he Commonwealth may sustain its burden by proving the crime's elements

with evidence which is entirely circumstantial and the trier of fact, who

determines credibility of witnesses and the weight to give the evidence

produced, is free to believe all, part, or none of the evidence."

---

[11] Here, the Commonwealth's bill of information charged Sewell with criminal mischief, as follows:

COUNT 1:   Crim'l Misch-Tamp W/Property – (F3)

Offense Date:  06/09/2016  18 [Pa.C.S.] § 3304 §§ A2

Intentionally or recklessly tampered with tangible property of another so as to endanger person or property

Victim:  Officer Brandon McPoyle

Citation of Statute and Section:  18 [Pa.C.S.] § 3304 §§ A2 (F3)

Criminal Bill of Information, 9/13/16.

***Commonwealth v. Brown***, 701 A.2d 252, 254 (Pa. Super. 1997) (citations omitted).

"A person is guilty of criminal mischief [under section 3304(a)(2)] if he . . . intentionally or recklessly **tampers** with tangible property of another so as to endanger person or property[.]"  18 Pa.C.S.A. § 3304(a)(2) (emphasis added).  In the present case, the trial court found the following relevant facts supported Sewell's criminal mischief conviction:  "[Sewell] reversed his car and slammed [it] into the front of the officers' squad car.  The squad car was pushed back several feet, narrowly missing [Officer] McPoyle as he moved behind [Sewell's] car to reposition himself next to [Officer] Fritz."  Trial Court Opinion, 6/5/19, at 4.

Sewell claims that in order to be guilty of criminal mischief under section 3304(a)(2), the Commonwealth must prove that the defendant "meddle[d] with or ma[d]e changes to tangible property."  [Sewell]'s Brief, at 19.  We agree.  Here, Sewell did not tamper with the officers' police cruiser, or any tangible property for that matter; rather, he intentionally backed up and crashed into the vehicle, causing it to sustain body damage.  ***Cf. Commonwealth v. Herman***, 924 A.2d 1231 (Pa. Super. 2007) (where defendant cut telephone lines to grocery store, evidence was sufficient to sustain conviction under section 3304(a)(2)); ***Commonwealth v. Zambelli***, 695 A.2d 848 (Pa. Super. 1997) (sufficient evidence to prove criminal mischief under section 3304(a)(2) where defendant scratched side of parked van with

object held between two fingers); ***Commonwealth v. Miller***, 339 A.2d 573

(Pa. Super. 1975) (section 3340(a)(2) conviction affirmed where defendant

cut legs off of base of fire tower causing tower to collapse onto power line and

interrupt electrical service to community). As Sewell correctly notes, his

action would be properly charged as a section 3304(a)(5) offense where one

"intentionally **damages** real or personal property of another."[12]  ***See*** 18

Pa.C.S.A. § 3304(a)(5) (emphasis added); ***see also*** 1 Pa.C.S.A. § 1921(a)

("Every statute shall be construed, if possible, to give effect to all its

provisions."). Because Sewell did not "tamper" with another's tangible

property, we conclude that the evidence was insufficient to enable the trial

judge, as fact finder, to find that all of the elements of criminal mischief under

section 3304(a)(2) were established beyond a reasonable doubt.

---

[12] Although not binding, we find persuasive an unpublished memorandum decision from our Court, ***Commonwealth v. Powell***, 2013 Pa. Super. Unpub. LEXIS 3074 (Pa. Super. filed July 24, 2013), which interpreted the term "tampers" as it is used in section 3304(a)(2). In ***Powell***, the defendant's conviction for criminal mischief under section 3304(a)(2) was reversed where the Court found that the Commonwealth only proved that the defendant *damaged* the victim's vehicle in a car accident. Although the court noted that the defendant acted recklessly by operating his vehicle under the influence of narcotics, "[t]here [wa]s no evidence that [the defendant] consciously or purposefully meddled with or altered [the victim's] vehicle[.]" ***Id.*** at *16. Consequently, even though Sewell may have acted intentionally when he reversed his car and hit the officers' police cruiser, like in ***Powell*** there was no evidence that Sewell tampered with the officers' car, only that he damaged it.

Accordingly, we reverse Sewell's judgment of sentence for criminal mischief under section 3304(a)(2).

Criminal mischief conviction reversed; judgment of sentence for criminal mischief vacated.[13]   All other convictions affirmed.   Case remanded for resentencing.[14]   Jurisdiction relinquished.

Judge McLaughlin joins this Memorandum.

Judge Nichols concurs in the result.

_____

[13] Reversal of Sewell's conviction for criminal mischief has no effect on his other criminal convictions for fleeing and firearm offenses under docket numbers CP-51-CR-0008071-2016 and CP-51-CR-0008073-2016. **See supra** n.1.  However, because he was convicted and sentenced on all three dockets in one trial, it has upset the sentencing scheme.  Thus, we must remand for resentencing.

[14] In his final issue on appeal, Sewell claims that his criminal mischief charge was improperly graded as a third-degree felony where the bill of information did not include a dollar amount regarding the damage done to the officers' police car or an allegation that the damage "caused a substantial interruption or impairment of a public service" as is required under section 3304(b). **See** 18 Pa.C.S.A. § 3304 (b) ("Grading. — Criminal mischief is a felony of the third degree if the actor intentionally causes pecuniary loss in excess of $ 5,000, or a substantial interruption or impairment of public communication, transportation, supply of water, gas or power, or other public service."). Having determined that Sewell's criminal mischief conviction must be reversed, this issue is now moot.

J-S59002-19
J-S59003-19
J-S59046-19


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/30/19